ROBERT F. WARD, Respondent, *v.* IROQUOIS GAS CORPORATION and Another, Appellants.

Fourth Department, June 30, 1931.

128

*Thomas R. Wheeler*, for the appellant Iroquois Gas Corporation.

*Raymond C. Vaughan* [*Noel S. Symons* of counsel], for the appellant International Railway Company.

*Hamilton Ward* [*William J. Flynn* of counsel], for the respondent.

SEARS, P. J.    The plaintiff has recovered a judgment for a large amount against both of the defendants as damages for personal injuries.    The accident in which the injuries were suffered occurred on the 8th day of February, 1929, at the corner of Elmwood avenue and Virginia street in the city of Buffalo.    On the afternoon of that day, plaintiff was riding, as a passenger, in a light delivery truck when the cover of a manhole which the truck had just passed was blown into the air by an explosion occurring in the manhole. The cover of the manhole, weighing about 300 pounds, went into the air some twenty or thirty feet and, in falling, pierced the cover of the truck and struck upon the plaintiff's back, causing him most serious physical injuries.    When the manhole cover went up, a flash was noticed and a gust of steamlike color, grayish, came from the manhole, and there was a smell of gas.    A minute or two later the cover of another manhole maintained by the defendant railway company two blocks to the west was blown off a short distance into the air.    Different testimony is involved in the case against the defendant Iroquois Gas Corporation from that in the case against the defendant International Railway Company. This is because the defendant railway company rested at the close

of the plaintiff's case without swearing any witnesses in defense. Motions for a dismissal of the complaint were made by each of the defendants at the close of the plaintiff's case. These motions were denied and exceptions taken. The International Railway Company rested and withdrew from the case during the introduction of testimony by the defendant gas corporation. At the close of all the evidence, the defendant gas corporation swore a number of witnesses. The trial court instructed the jury that they were not to consider any of the evidence introduced on the part of the defendant gas corporation in passing on the case against the defendant railway company. We must, therefore, consider separately the appeals of the two defendants.

As to the plaintiff's case against the International Railway Company, it was shown by the plaintiff that the manhole of which the cover was blown off was maintained by the defendant railway company. The dimensions of the manhole were six feet nine inches in a northerly and southerly direction and six feet six inches in an easterly and westerly direction. The bottom of the manhole was six feet six inches below the surface of the pavement. Its cover inside was three feet in diameter and a little over one inch thick. Under the cover was a dust ring ten inches below the manhole cover. There are two holes in the dust ring but none in the manhole cover itself.

The defendant railway company maintained a two-track electric railway in Elmwood avenue and an electric railway in Virginia street. In Virginia street, east of Elmwood avenue up to a point forty-six feet distant from the curb line on the easterly side of Elmwood avenue, there are two tracks. At that point the northerly of the two tracks, by a switch, meets the southerly track so that from that point to and across Elmwood avenue the defendant's railway is a single-track line. There are switches between the track in Virginia street and the tracks in Elmwood avenue. The manhole is within the intersection of the two streets. Within the intersection there were also three other manholes, two of the Buffalo General Electric Company and one of the New York Telephone Company. The defendant gas corporation maintained two gas mains in Virginia street. Both were under the street pavement. One on the northerly side of the street was an eight-inch main, and the other on the southerly side of the street was a twelve-inch main. Both had been maintained for over thirty years. The twelve-inch main passed directly through the manhole where the explosion occurred. Also passing through the manhole there were seven electric cables maintained by the defendant

railway company. Four of these carried a supply of electric current from a station of the defendant railway company a mile or more to the northwest to a substation of the defendant railway company a few blocks to the east. Each of these four cables carried alternating current of 11,000 volts. There were also two other cables carrying direct current at 500 to 600 volts which by connection with trolley wires reached the motors in the cars, energized them and so propelled the street cars. There was also a seventh cable which was a return cable carrying negative electricity in its return to the power house. Each of these cables was insulated and covered with lead sheathing and firmly supported to the walls of the manhole. As the cables passed out of the manhole in each direction, they entered the ducts of conduits. In the manhole the sheathings of the alternating ʳcurrent cables were bonded together and connected with the negative return cable. The direct current sheathings were also bonded together and similarly connected with the return cable. No criticism is offered by the plaintiff of the construction of the manhole or of the general arrangement of the cables or of the system of insulation or of bonding.

There is, however, evidence that several explosions had previously occurred in this manhole in which the cover had been blown off, but none of the other explosions are shown to have occurred within the four months preceding the accident here involved.

The gas carried in the gas corporation's mains is inflammable but not explosive unless mixed with a definite proportion of air. It becomes explosive when mixed with air in a ratio of about ten parts of air to one part of gas, and an explosion will then occur only when a spark or flame is applied to the mixture. If the gas is richer than one part to ten of air, the mixture is inflammable, but not explosive. In no case will the gas, even when mixed in explosive quantities, explode unless a spark or flame is applied. An electric spark caused by a short circuit or any break in an electric conductor is sufficient to explode illuminating gas if mixed with air in explosive quantities.

Assuming that there was in the manhole in question at the time of the explosion an explosive mixture of air and gas, an electric spark would be sufficient to set it off. The manhole, urges the plaintiff, was in the possession and control of the defendant railway company. The explosion itself shows that there was a substance of an explosive character in the manhole. The visible flash, the smoke and steam, the smell of gas, taken in connection with the presence of the gas mains are evidence, he claims, that the explosive substance in the manhole had, as a component part, the gas supplied by the defendant gas corporation. The possi-

bility of a spark from a short circuit arising from breakage in insulation or in the wires in the cables or other derangement of the defendant railway company's electric conductors would supply the necessary ignition. All the electric appliances and the manhole itself being in control of the defendant railway company, a *prima facie* case, he contends, is established by these facts. (*Plumb* v. *Richmond L. & R. R. Co.*, 233 N. Y. 285; *Robinson* v. *Consolidated Gas Co.*, 194 id. 37; *Griffen* v. *Manice*, 166 id. 188.)

Of course the testimony shows that there were other possible means of flame or spark reaching the interior of this manhole. Some spark or flame may have got into it from the street through a displacement of the manhole cover — a lighted cigarette is suggested, or a burning bit of carbon from an automobile exhaust, or the flame may have penetrated to the manhole by means of burning gas following through the conduits from some other source of fire. As has been stated, there were other manholes in the vicinity carrying electric wires of other companies also subject to short circuit. A spark from a short circuit elsewhere might furnish the original ignition. These, however, seem remote possibilities and in our opinion, were it not for the evidence about to be referred to, a *prima facie* case was made out against the International Railway Company by the facts which have been mentioned. (*Stubbs* v. *City of Rochester*, 226 N. Y. 516; *Griffen* v. *Manice, supra.*)

As a part of the plaintiff's case, the plaintiff produced as a witness the general foreman of the line department of the defendant railway company. From him was elicited testimony to the effect that the inspection of overhead and underground circuits came within his department; that the defendant maintained a repair department which has nothing else to do but take care of cables; that insulations break down sometimes because of weak spots in the cables and when they break down there are short circuits which would produce a spark; that an inspection of this particular manhole had been made the day before by two laborers in his department; that about twenty minutes after the accident to the plaintiff, the witness went to the manhole where the accident occurred; that the manhole was then open. This testimony was introduced for the purpose of showing a possibility of an electric spark in the manhole in question having caused the accident. On cross-examination, it was open to the defendant railway company to show from this witness what he actually discovered on the day in question in order to negative the inference of sparks occurring through defects in the wiring which the plaintiff sought to draw from the witness' testimony which had been given in the direct examination. On the cross-examination the witness testified with

precision as to the installation of cables in this manhole, and also testified that when he inspected the manhole immediately after the accident, he got down into the manhole and examined it; that he inspected the equipment and found nothing wrong with the equipment; in fact he found absolutely no evidence of anything wrong nor of any arc having occurred in that manhole.

The plaintiff's own evidence, therefore, negatived the inference which might otherwise be drawn from the accident itself in the light of surrounding circumstances that a spark occurring within the manhole caused the explosion. If all the cables and equipment were in proper condition immediately afterward ignition cannot have resulted from negligent defects in the electric devices. Some other cause must be sought, and the probability of the accident having occurred from what otherwise might be deemed remote possibilities increases. The testimony of the witness is a part of the plaintiff's case. It does not matter that he was an employee of the defendant railway company. His credibility was vouched for by the plaintiff who called him. (*Potts* v. *Pardee*, 220 N. Y. 431; *Muriel* v. *Baltimore Insular Line, Inc.*, 232 App. Div. 699.)

It is urged, however, that the spark may have originated in short circuits in the defendant railway company's electric lines elsewhere than within the manhole. The consideration of such a possibility leads simply to endless speculation. A spark negligently produced by the defendant railway company elsewhere is a possible cause of the ignition, but no such happening is proved. With the gas permeating the ground under a paved and frozen surface, no one on the testimony produced can say where the ignition did in fact originate. As the place of origin cannot be identified, neither can the agency. For these reasons the conclusion is reached that the evidence introduced is not sufficient to warrant a verdict against the defendant railway company.

As to the defendant gas corporation, not only is all the evidence thus far considered germain to the case, but there is also evidence introduced by the defendant gas corporation itself. This defendant did not attempt to disprove that the explosion occurred through the accumulation of an explosive mixture of air and of gas from its pipes. It showed that certain lateral gas pipes crossing Virginia street at varying distances to the east of Elmwood avenue, and which had been in place for many years, were eaten by the effect of electric currents passing through them, the process being known as electrolysis. The nearest lateral so affected is distant less than a hundred feet from the manhole where the explosion occurred. Electrolysis was shown to be due to stray electric current coming from the rails of the defendant railway company's

tracks on their return to the source of power. Where such stray currents meet the metal pipes and again where they leave them, corrosion and disintegration occur. Through the breaks in these lateral gas pipes an amount of gas must have escaped to form the explosive mixture. The defendant gas corporation is not an insurer against accidents from escaping gas. It is only responsible if it is shown that gas escapes through its negligence. (*Hammerschmidt* v. *Municipal Gas Co.*, 114 App. Div. 290.) There was, however, nothing unusual or unforeseeable in the corrosion resulting from the straying of these electric currents from the tracks of the street railway company. The record shows that such erratic electric currents must be anticipated wherever the single trolley electric railway system is used, and the tracks relied upon for the return electric current. With the defendant gas corporation's knowledge that its lateral pipes ran transversely of the tracks and were consequently particularly apt to suffer from electrolysis; that the danger could be reduced or eliminated by increasing the depth of the gas pipes or more frequently renewing them, there appears to be ample to warrant the jury in finding that there was a lack of ordinary care in the maintenance of the system which resulted in the explosive substance being present in the manhole in question.

Both the plaintiff and the gas corporation excepted to the ruling of the trial justice permitting the defendant railway company to withdraw from the case at the close of the plaintiff's case, and ruling that the testimony afterwards received was not to be considered against the defendant railway company, and claimed that under the provisions of section 211 of the Civil Practice Act, the principle stated in *Bopp* v. *New York Electric Vehicle Transportation Co.* (177 N. Y. 33) was no longer effective. The point in our opinion as to the correctness of this ruling as between the defendants is not before us. No pleading was served by either defendant upon the other. Even if there was error in this ruling, it cannot affect the paramount right of the plaintiff to its judgment against the defendant gas corporation. (*Price* v. *Ryan*, 255 N. Y. 16; *Fox* v. *Western New York Motor Lines, Inc.*, 232 App. Div. 308.) As to the plaintiff, there was no error. The *Bopp Case* (*supra*) is a controlling authority upon the point. Section 211-a of the Civil Practice Act (added by Laws of 1928, chap. 714) has given no new remedy to the plaintiff, however it may be construed as between defendants.

The judgment was an extremely large one but the injuries were unusually severe. There was a break of the plaintiff's back at the tenth dorsal vertebra with consequent injury to the spinal cord. It has rendered the plaintiff unable to walk without crutches

or even to stand for more than a brief time, and has deprived him of control of bowel and bladder functions. He has been made impotent. These injuries are distressing in the extreme and are unquestionably permanent. He was forty years old at the time of the accident, had been a steamfitter earning from $150 to $160 a month. He was preparing to enter a new employment from which earnings of $50 a week were to be expected. His medical and hospital expenses and nursing up to the time of the trial, less than two years, amounted to about $3,500. Under the circumstances, the verdict of $60,000 is not excessive.

For these reasons, the judgment should be reversed on the law as against the defendant International Railway Company, and a new trial granted, with costs to the appellant International Railway Company to abide the event, and the judgment as to the defendant Iroquois Gas Corporation should be affirmed, with costs.

All concur, except CROUCH, J., who dissents in an opinion and votes for affirmance as to both defendants. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

CROUCH, J. (dissenting). The decision about to be made not only deprives plaintiff of his judgment against the railway company, but also, and definitively, deprives the gas corporation of its right of contribution from the railway company under section 211-a of the Civil Practice Act, which ripened by the adjudication below. (*Price* v. *Ryan*, 255 N. Y. 16.) The unusual circumstances of the case bring doubts both as to the law and the expediency of the decision. Hence this dissent.

Holding that the doctrine of *res ipsa loquitur* applies to both defendants, the majority of the court finds in the cross-examination of one witness called by the plaintiff testimony which is said as matter of law to have negatived the inference of negligence by the railway company which otherwise might have been drawn from the surrounding circumstances. That witness was the general foreman of the line department of the railway company. The testimony was elicited by counsel for the railway company on what is held to have been strict cross-examination. Had the witness been called by the railway company and the same testimony given, the decision here would have been affirmance instead of reversal. The direct examination of the witness was devoted to showing general knowledge of potential danger by the railway company previous to the explosion. He was not questioned in regard to any specific defects nor as to any inspection subsequent to the explosion. Therefore, his testimony on cross-examination that his inspection after the explosion revealed no defect in the equipment

was essentially a part of the case for the defense and the witness was the railway company's own on that point. But even if that were not so, it does not necessarily follow that the testimony was conclusive. The settled — but much criticized — rule goes no further than preventing a party from impugning the credibility of his own witness by direct attack. The credibility of a witness is always a question for the jury, and the jury may accept a part of the testimony of the witness as true and disbelieve the rest. (*Becker v. Koch*, 104 N. Y. 394, 401; *Carlisle v. Norris*, 215 id. 400, 410; *Title Guarantee & Trust Co. v. Pam*, 232 id. 441, 454.) While no directly contradicting witness was called by plaintiff, there was evidence of many facts — aside from the fact of the accident itself — which tended to contradict and was inconsistent with the fact to which this witness testified. There was no error in sending the issue of negligence to the jury.

Doubt there is, also, in the ruling which permitted the railway company to withdraw at the close of the plaintiff's case. As to the gas corporation, error is arguable. As the case stood when the ruling was made, the gas corporation in the event of a joint judgment was entitled to contribution from the railway company. Therefore, if there was to be a verdict against itself, it had an interest in having it run also against the railway company. (*N. Y. Consolidated R. R. Co. v. Massachusetts Bonding & Ins. Co.*, 193 App. Div. 438; affd., 233 N. Y. 547.)

The effect of the ruling was to prevent consideration by the jury of testimony adduced by the gas corporation tending to show negligence by the railway company. It is suggested, in view of the provisions of section 211-a of the Civil Practice Act, that the rule stated in many cases and recognized in the *Bopp* case no longer applies to actions of this character. If the ruling was erroneous, it was not, so far as the outcome of the trial is concerned, prejudicial. The verdict ran against both defendants. The right to contribution became choate. The evil of the ruling, however, was not spent. The decision about to be made, breaking up the joint judgment, could not be made if the testimony excluded from consideration by the ruling were in the case as against the railway company.

The court finds itself unable to prevent this injustice to the gas corporation because of the paramount right of the plaintiff to its judgment against that defendant. But whether the holding in *Price v. Ryan* (*supra*) goes so far is doubtful. The appellant there had no adjudicated right to contribution. Here there is such a right. Under such circumstances it seems that the course to be pursued is indicated by the decision in *U. S. Printing &*

*Lithograph Co.* v. *Powers* (233 N. Y. 143). I think the judgment should be affirmed as to both defendants; but if the view of the majority is right on the main point, then there should be a reversal as to both defendants and a new trial.

Judgment and order reversed on the law as to the appellant International Railway Company and a new trial granted as to that appellant, with costs to the appellant to abide the event. Judgment and order affirmed, with costs as to the appellant Iroquois Gas Company.