EMILY ORLEXEY et al., Plaintiffs, *v.* NEW YORK AND QUEENS ELEC-
TRIC LIGHT AND POWER COMPANY, Defendant.

Supreme Court, Trial Term, Kings County, February 15, 1946.

*Gerald J. Friedberg* and *Rubin Finkelstein* for plaintiffs.

*Harry P. Rodman* and *James C. Sargent* for defendant.

F. E. JOHNSON, J. At the end of plaintiffs' direct case the motion to dismiss was because no negligence had been shown; plaintiffs' position was that the facts shown came within the *res ipsa loquitur* rule. They were: Defendant owned, operated and controlled a manhole in the street, used in connection with its electric service, in which were various electrical connections, wires, conduits, etc.; at the street surface was a circular heavy iron manhole cover, laid in a recess which made its top level with the street; as the plaintiff wife walked across the street and approached the manhole an explosion took place, the cover was blown up and fell a short distance from the opening, flames and smoke came out of the manhole and blackened her face and caused her to fall down, whereby she sustained bodily injuries.

The plaintiffs' case is not necessarily one for damage caused by an explosion; there were flame, smoke and noise but that does not prove that anything *exploded*. It probably was an event that could be loosely called an explosion.

Decision on a motion to dismiss at that point was reserved; it should be denied upon the following authorities: *Rini* v. *City of New York* (N. Y. L. J., April 28, 1937, p. 2121, col. 5 [App. Term, 2d Dept.], leave to appeal denied N. Y. L. J., May 17, 1937, p. 2484, col. 5), *Lessig* v. *New York Central R. R. Co.* (271 N. Y. 250), *Foltis, Inc.,* v. *City of New York* (287 N. Y. 108) and *March* v. *Carbide and Carbon Chemicals Corp.* (265 App. Div. 1064).

Harper (Law of Torts, § 77, p. 183) says the rule applies " when certain types of harms occur under circumstances which, from common experience, strongly suggest negligence and when the agency or instrumentality which occasioned the harm is under the exclusive control and management of the defendant * * *."

The rule was applied in *Tortora* v. *State of New York* (269 N. Y. 167), an explosion case, and in *Ward* v. *Iroquois Gas Corporation* (233 App. Div. 127), a manhole explosion accident.

Cases in point outside of this State include *Bolger* v. *City of*

*Chicago* (198 Ill. App. 123), a subsurface conduit explosion, and *Beall* v. *Seattle* (28 Wash. 593), an explosion under the sidewalk.

Of course, every accident does not imply neglect by the owner of the instrumentality by which the damage was done and the *res ipsa* rule is confined to certain types of accident. Common sense indicates that escaping water (*Jenny* v. *City of Brooklyn*, 120 N. Y. 164) does not imply negligence; nor does escaping gas (*Schaum* v. *Equitable Gas Light Co.*, 15 App. Div. 74). It does apply " when, under the circumstances involved, direct evidence is absent and not readily available " (*Bressler* v. *New York Rapid Transit Corp.*, 270 N. Y. 409, 413, quoted in *Goodheart* v. *American Airlines, Inc.*, 252 App. Div. 660, 663). Here plaintiff made no attempt to explain the cause and therefore was able to invoke the rule (*Goodheart* v. *American Airlines, Inc., supra*).

When the accident " in the natural course of events might not be likely to occur without negligence, defendant, having control * * * would be in the best position to go forward with proof tending to rebut an inference of negligence and to show that the occurrence was without its fault. In such an event, the rule *res ipsa loquitur* would apply." (*Bressler* v. *New York Rapid Transit Corp.*, 270 N. Y. 409, 413, *supra*, citing authorities.)

One of the citations is *Volkmar* v. *M. R. Co.* (134 N. Y. 418) where, at page 421, the rule was applied because " from the nature of the accident negligence might be inferred "; in another it was said that " the circumstances and character " of the accident are the test of its application and if it is one that " ' in the ordinary course of business, does not happen if reasonable care is used ' " the rule applies (*Griffin* v. *Manice*, 166 N. Y. 188, 193–194). Another said that it applied if " the entire occurrence as proved, could not have happened without negligence " (*Robinson* v. *Consolidated Gas Co.*, 194 N. Y. 37, 41).

No exception is made because of incidental use of electricity; the accident in *Piehl* v. *Albany Railway* (30 App. Div. 166, 167) was not an *explosion;* it was because of " the bursting of the flywheel ".

In *Cosulich* v. *S. O. Co.* (122 N. Y. 118) the damage was not caused by the explosion; there was a fire thereafter and it caused the damage and since escaping steam or water cannot, upon the breaking of a container, cause a flame, it is improper to say that the case holds that the rule does not apply to " explosions." *Smith* v. *Mayor* (66 N. Y. 295) is cited as

holding that, but it was not such a case; there a sewer overflowed and there is no mention in the report of any explosion.

The defendant then offered evidence to show that it was not negligent; in substance it was: the opening was created in the street with city authority, and a rectangular vault was made, covered as above; in it were the wires, cables and connections, this being one of many similar manholes owned by the defendant in the neighborhood, the cables going underground from one manhole to the other and serving the neighborhood with electricity; this manhole (908) was near a corner, and east of it, on the other street, was manhole 1007, between twenty-five and forty feet distant; in 908 was a sort of fuse called a "limiter," made up of three connected cable ends, protected by rubber insulation, and intended to so operate that if a short circuit occurred on either side thereof, the effect would be the melting of certain metal connections in the limiter by the inflow of high current due to a short circuit; this melting would disconnect the cable ends and prevent further passage of current. It is questionable whether any of defendant's witnesses were experts, but since the explosion, the flame and the smoke must have had some cause, there seems to be no probable explanation except their opinion that there was a short circuit; the substance of the proof was that it took place between 908 and 1007; one witness said that a cable running from 908 to 1007, when cut at each manhole, came out in two parts because somewhere between the manholes it had burned, melted or otherwise parted; there was no corroboration of his statement, and no explanation of what happened to these allegedly burned ends at what had once been a continuous cable; no one who examined them testified, they were not produced, and no explanation was given of the failure to produce them; the probabilities of that being the condition are not strong; a section of a similar cable, made by the same third party, was identified by an employee of that company and is in evidence; the representative of that manufacturing company described the manufacture of the cable, and completely negatived the probability that it would disintegrate or that the insulation would not last.

In the absence of any suggestion that it was improperly insulated against destructive agencies there is no reason for thinking that any of the insulation would so change its condition as to allow contact between its wires; originally they did not touch each other. The witnesses for defendant agreed that the touching of wires formerly insulated was the cause of a short circuit. The damaged cable was not exposed to the earth, and

had no contact with any agency that would destroy its outer covering, and each wire was not only separately insulated but pressed so tightly that neither air nor water could reach it; how, at the point where it is alleged that the cable was burned or otherwise showed signs of a short circuit (i.e., between the manholes), that could have happened, or wires could get into contact because the insulation had disappeared, is a mystery; it seems highly improbable.

A more probable explanation of the short circuit is found in the testimony of defendant's witness who, seventeen days before the accident, went to 1007 and found a dangerous condition there, indicative of wires being in contact, or insulation being insufficient, resulting in heat being generated in places where it should not exist. He did not say that he investigated to find where the heat was coming from, or whether wires were in danger of contact; nor was there any proof that thereafter and up to the date of the accident that danger spot was visited to see if current was escaping and this potential short circuit was developing again.

The only reasonable inference is that a short circuit arose on December 31st from conditions existing in 1007, and while it might have manifested itself destructively somewhere between the two manholes, certainly it manifested itself spectacularly in 908. None of the defendant's witnesses offered any explanation of how flame, smoke and the explosion could happen in 908; the most impressive of them said, in effect, that it could not happen.

The difficulty with that position is that not only did the plaintiff who testified to its occurrence make a good impression but the storekeeper at the store into which she went was not called to deny that she had her face blackened although he was in court as a defendant's witness; a policeman, driving towards the spot in a radio car, saw the flames coming out of the manhole; he was called by the defendant so there is no reason whatever for doubting that he told the truth. No defendant's witness gave any explanation of how the 250-pound manhole cover was blown off and landed about a foot from the hole; the policeman said that it was about two feet away, and there was no contradiction.

It would be, therefore, against the weight of the evidence to say that there was no explosion, no flame, no smoke, and that the manhole cover was not blown off the top and fell a foot away; the claim of the defendant's witness that this could not have happened must be discredited.

Since these things did happen there must have been a cause; the explosion, flame, smoke and force came from 908; no one suggests that illuminating gas had seeped into it, or that sewer gas was there and the description of the construction of the manhole negatived either probability.

It is a fair inference that the proximate cause of these manifestations arose in 1007, due to the recurrence there of conditions that had once been remedied but which had evidently reappeared. It is probable that they were caught in time when the repairman went there on December 14th but 1007 was not reinspected soon enough thereafter to detect the fact that they were reappearing; evidently a short circuit occurred in 1007 on December 31st and manifested itself in 908 in the manner described.

Now that both sides have rested on the issue of liability, the question is whether the plaintiff has proven by a fair preponderance of evidence that the damage to her was caused by the negligence of the defendant.

The defense has furnished plaintiffs with impressive corroboration by the policeman, and has given them the benefit of an "explanation" of the accident which discloses that a danger spot from which just such results would naturally flow became known to the defendant on December 14th and was not taken care of in the succeeding seventeen days as ordinary care required it should be; the defendant's evidence has established the defendant's negligence.

The trial will be resumed on February 20th in Special Term, Part II, at 2:00 P.M., at which time exceptions, etc., may be noted; thereupon the issue of damages will be tried.