RAYNER *v.* LINDSEY, ADMR., ETC.

No. 42243 March 19, 1962 138 So. 2d 902

*Morse & Morse,* Gulfport, for appellant.

*P. D. Greaves,* Gulfport, for appellee.

RODGERS, J.

This is a suit based upon personal injury and property damage resulting from an automobile accident.

 █ This case came to this Court on appeal from the Circuit Court of Harrison County, where the plaintiff obtained a judgment in the sum of $60,000. The trial judge sustained a motion for a new trial on the amount of damages alone, on the condition that plaintiff would agree to remit the sum of $15,000. Plaintiff declined to agree to remit said sum and appealed to the Supreme Court. Defendants also appealed.

The facts in this case are as follows: On or about November 8, 1959, the plaintiff, appellant here, was operating his 1953 Ford dump truck in a southerly direction on Highway 55 near Biloxi, Mississippi. At the time and place, the deceased Douglas S. Milo was driving his 1956 Oldsmobile in a northerly direction. After Milo had passed one vehicle going in a northerly direction and was about to pass a second vehicle traveling in the same direction in a curve, his car went out of control and crossed over the center line so as to strike the oncoming truck, resulting in his death and the destruction of the two vehicles. The appellant L. A. Rayner brought suit for personal injuries to himself and for the loss of his truck. The trial court instructed the jury to find for plaintiff insofar as liability was concerned, and the jury returned a verdict in favor of plaintiff, appellant here, in the sum of $60,000.

Appellant has submitted two assignments of error to this Court, on which a reversal is sought. (1) The court erred in reducing the verdict of the jury. (2) The court erred in refusing to permit the jurors to testify in support of the verdict on a motion for a new trial.

The testimony shows that the deceased Douglas S. Milo caused the accident involved in this case by trying to pass an automobile in a curve in the face of oncoming traffic. The testimony, however, shows that after the accident, appellant was never unconscious. He walked about at the scene of the accident, talking to people. He complained on two or three occasions that his back was hurting but refused to go to the hospital to determine his injuries. Six days after the accident, he went to see one Dr. Donald L. Cooper, advising him of the accident and seeking medical aid. Dr. Cooper discovered that he was bruised "from on the left thoracic area", that "it was hard for him to stoop and bend or turn his head", and one of his fingers was broken. The doctor also testified that he had parasthenia of his feet, legs and arms; that the cervical spine and dorsal spine had lost some of its contour, and palpitation of the muscles revealed that there was muscle spasm in the cervical area, and spasms were found in the sternocleidomastoido and trapezius muscle. Certain tests were given. A stretch test indicated a rupture or injury to the third, fourth and fifth lumbar nerves and also indicated damage to the mucleouspulposis of the third, fourth and fifth lumbar spine, from which, it is said, he would suffer the rest of his life. Dr. Cooper was asked whether or not he advised appellant to go to the hospital, and he answered "We discussed that and came to the conclusion that he would do just as well at home, and a satisfied patient gets along better. I advised him to go home and he stayed in bed only with bathroom privileges and coming back and forth to my office." The doctor was asked this question: "Was there a difference in his appearance on December 14th as compared to what you had seen his appearance prior to December 8th?", and answered, "Shockingly so, he walked in like a man about eighty or ninety years old, hurting and complaining." The doctor also said "* * *

I gave him something for his kidneys because on examination there we found blood coming from bruises of the left kidney. * * * I saw the kidneys had improved and used that medicine again. Then I used the medication to open the arteries. These conditions were edema and the sealing, and stasis, and slowing down of the flow of blood through the damaged area, and I used medicine, drugs, to open the arteries to get a better drain and repair in the damaged area." He was asked: "Could you tell us whether or not Mr. Raymer complained of pain?", and answered "Yes, he hurt continuously. I had to renew his prescription. He hadn't limbered up, hadn't walked." He gave dates that appellant visited his office. The doctor testified that appellant was permanently disabled, and said: "The tests were all positive, the stretch test, the parastesia, all was positive, shows permanent injury and he cannot improve any further. The only comfort he will have is if the bones of the lower back grow together, or whether he will have his spine operated on and bones placed on either side of the body, of the verbebra to make it stationary, or ankylosis, which he does not want, and it is his back." He also said "I don't think he has been completely free of pain a single moment."

In answer to whether or not Mr. Rayner would ever be able to return to his occupation as a truck driver, he said "No, he can't. I would like to say that this way: We have two arms and two thumbs, and if they are damaged or completely destroyed, then that is forever, that is a complete disability." On cross-examination, the doctor stated that appellant had never been in a hospital, and that it wouldn't have done him any good. He stated that he had no fractures, or broken bones with the exception of a finger, as revealed by X-ray. He said he would not hire Mr. Rayner "even for my yard man."

Mrs. Donald L. Cooper, wife of the doctor, is a nurse, and she testified that she ran blood tests on appellant, that she took his blood count and urinalysis, and that these tests showed that he was "running pus, he had pus and red blood cells and an occasional,—he had about three times albumen."

Mrs. L. A. Rayner was introduced as a witness and testified that her husband made $13,900.07 with his truck in 1959, and it was deposited in the bank.

Under the facts in this case, a verdict of $60,000 is unquestionably large. In similar cases, as to awards allowed, see the following: Shell Petroleum Corporation, et al. v. Kennedy, 167 Miss. 305, 141 So. 335; Ward v. Iroquois, 233 App. Div. 127, 251 N. Y. Supp. 300; McNeil v. East & Bay Street R. Co., 220 Cal. 591, 32 P. 2d 598; Mealy v. Ewen, 225 Ky. 117, 7 S. W. 2d 823; St. Louis R. Company v. Davis, 262 S. W. 923 (Tex. Civ. App.); 15 Am. Jur., Damages, Sec. 223, p. 694; 25 C. J. S., Damages, Sec. 198 (2), p. 934.

In pointing out that the verdict in this case is large, we are not unmindful that this Court has often said "* * * that fixing the amount of money damage in personal injury cases is a difficult thing to do, and that this primarily is the province of the jury. We should not disturb the verdict unless the amount is so excessive or so small as to be against the great weight of the evidence and shows the verdict was the result of passion, prejudice or bias." Brown & Root, Inc. v. Continental Southern Lines, 228 Miss. 15, 87 So. 2d 257, 263. See also Aponaug Mfg. Company v. Carroll, 183 Miss. 793, 184 So. 63; Meridian Taxicab Company v. Ward, 184 Miss. 499, 186 So. 636, 120 A. L. R. 1346.

In the case of Beard, et al. v. Williams, 172 Miss. 880, 161 So. 750, where Mrs. Williams, the plaintiff, did not produce the testimony of a doctor to prove her injury, the Court said: "The fact that the party lived

where there were many physicians, and claimed to have suffered injury, and still called no physician, nor had any treatment save as above stated, would raise the presumption that such testimony, if produced, would be against the claim of such party.'' The Court also said: ''We are conscious of the fact that the verdict of a jury is to be given great weight, and is the best means, when fair, of settling disputed questions of fact. Nevertheless, throughout the entire history of jury trials, the courts have exercised a supervisory power over them, and have granted new trials whenever convinced, from the evidence, that the jury has been partial or prejudicial, or has not responded to reason upon the evidence produced. The duty of the court in supervising trials by jury in such a vital part thereof that no court may refuse to exercise such power whenever fully convinced of its duty so to do.'' See also Flournoy v. Brown, 200 Miss. 171, 26 So. 2d 351.

The trial judge not only heard the testimony of the witnesses, including the medical evidence, but he saw the plaintiff in court, and in addition had an opportunity to hear the history of other similar cases read and discussed by eminent attorneys, to the end that when it became his duty to pass upon a motion for a new trial upon the question of excessiveness of the verdict, he could focus not only the facts but the law on the question of damages. It was his duty in the first instance to determine whether or not a new trial should be granted movant. Sec. 1536, Miss. Code 1942, Rec.

No appeal from an order granting a new trial was available to the parties in a damage suit on the question of excessiveness or inadequacy of damages until the above-mentioned Sec. 1536, supra, was amended by Chap. 230, Laws 1956. Since that time, this Court has followed the rule announced in Womble v. Miss. State Highway Commission, 239 Miss. 372, 123 So. 2d 235, 236 (1960), as follows: ''The rule as universally

announced in our decisions is that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless the action of the trial court in sustaining the motion shows a manifest abuse of his discretion, and the rule is particularly applicable where the new trial has been granted, since in such cases the rights of the parties are not finally settled as they are where a new trial is refused. Smith v. Walsh, 63 Miss. 584; Harper, et al. v. Mississippi State Highway Commission, 216 Miss. 321, 62 So. 2d 375; Long v. Magnolia Hotel Company, 236 Miss. 655, 111 So. 2d 645, 114 So. 2d 667." To the same effect is Flurry v. Dees, 128 So. 2d 873 (Miss. 1961).

In the case of Wilson &` Co., Inc. v. King, 250 Ala. 90, 33 So. 2d 351 (Ala. 1948), it was said: "In a more recent case, Tennessee Coal, Iron & Railroad Company v. Aycock, et al., 248 Ala. 498, 28 So. 2d 417, it was observed: '* * * We feel constrained to hold that the trial court, who saw and heard the witnesses who testified at the trial, was in a better position than we to reach a just conclusion on this contention. * * *' (The excessiveness of the award.)"

The foregoing rule is firmly fixed in the general law, and although appeals from an order granting a new trial is new in our jurisdiction, the textwriter brings an old rule to our attention in the following language: "The trial court's decision of the question whether a remittitur shall be exacted as a condition to denying the application for a new trial may not be relied on as ground for reversal unless an abuse of discretion is shown. Where the ruling is not clearly erroneous, the action of the trial court should not be disturbed. * * *" 39 Am. Jur., New Trial, Sec. 212, p. 205. See also Pryor Brown Transfer Company v. Gibson, 290 S. W. 33, 51 A. L. R. 193 (Tenn.); Ency.,

Automobile Law & Practice, Vol. 10, p. 501, Sec. 6470, Note 38.5; 3 Am. Jur., Appeal and Error, Sec. 894, p. 455.

██ ██ We cannot say that the trial court abused its discretion in granting a new trial in this case where the evidence shows the plaintiff was not required to go to a hospital, and the evidence to prove damages is based primarily upon the sympathetic diagnosis of his family doctor, who lives and practices his profession many miles from where the plaintiff lives, so that he is required to travel a long distance to see him. This is especially true when it is alleged that appellant is suffering intense pain and will continue to suffer pain all of his life, yet he leaves a metropolitan area surrounded by hospitals and continues to travel many miles to see his doctor. It is apparent to this Court that the trial judge would have been justified in requiring a much larger remittitur. The case will not therefore be reversed on the ground that the trial judge abused his discretion in granting a new trial unless a remittitur was entered. We cannot hold that the trial court abused its discretion in not requiring a larger remittitur.

██ ██ The appellant argues that the jurors, who were summoned to appear at the hearing of the motion filed by the defendant requesting a new trial, should have been permitted to testify in order to deny that their verdict was prompted by bias, passion or prejudice, so as to bolster their verdict. We do not believe there is any merit in this contention. In the case of George Skates v. State, 64 Miss. 644, 1 So. 843, Judge Cooper, speaking for the Court, said: "It is unnecessary to pass upon the competency of the jurors who were examined on the motion for a new trial as witnesses *to support their verdict*. That they have been held incompetent in several cases by this court is conceded by the attorney general, who presses upon us the propriety of overruling these decisions." (Emphasis supplied.) The

cases cited in this authority point out that testimony of others may be received to show the misconduct of the jury.

In the case of Morris, et al. v. Robinson Brothers Motor Co., 144 Miss. 861, 110 So. 683, the counsel for appellants, on motion to set aside the second verdict, returned by the jury after being sent back into the room by the trial judge, offered to show by some of the jurors that their first verdict was intended to be one in favor of the defendant. They argued that the court erred in this regard because it was not an effort to impeach the verdict of the jury, but was an attempt to explain and uphold the first verdict rendered by the jury. This Court said: ''Taking the last named contention of the appellants, first, we think the court was right in refusing to hear testimony from jurors which tended to impeach their last verdict, or to show the meaning of their first one, because the meaning of the verdict must be obtained from the language used; * * *''

In the case of Shaw v. State, 79 Miss. 577, 31 So. 209, this Court pointed out the few exceptions to the rule that jurors will not be heard to testify to impeach their verdict in the following language: ''Jurors may not be heard to impeach their verdict by their own misconduct, or what took place in their private room, or because of the grounds on which they found their verdict, but are competent to show the misconduct of others.'' See also 53 Am. Jur., Trial, Sec. 1113, p. 774. This Court said in the case of Flournoy v. Brown, supra: ''After verdict, a jury may be polled, but not interrogated otherwise.''

We are therefore of the opinion that the trial court was correct in refusing to hear the testimony of jurors summoned by the respondent on a motion for a new trial for the purpose of showing that they had no prejudice or bias in returning a large verdict.

██ █ The cross-appellant alleges on his cross-assignment of errors, that the verdict of the jury was so excessive as to evince bias, prejudice and passion on the part of the jury. We have pointed out that the verdict in this case is large, but we do not find manifest error in the ruling of the trial court requiring a remittitur. However, under the testimony in this case, we do not hold that the jury did not have the right to return a large verdict. It has been said that where the element of prejudice, passion and bias are wanting, and objection is made that excessiveness of the verdict is unsupported by the evidence, a remittitur of such excess may be entered.

██ █ Mr. Abbott, in his excellent book, Civil Jury Trials, Sec. 12, p. 768, Note 2, uses the following language: "Although the court has no right to substitute its own estimate of damages for that of the jury, yet it has the right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict, and to order a new trial unless plaintiff consents to reduce the verdict to such amount. Hutchins v. St. Paul M. & M. R. Co., 44 Minn. 5, 46 N. W. 79. See also Galveston, H. & S. A. R. Company v. Porfert, 72 Tex. 344, 10 S. W. 207; Wainwright v. Satterfield, 52 Neb. 403, 72 N. W. 359, where it is held that in an action ex contractu, (and said that even in an action ex delicto) a verdict erroneous because of excessive damages awarded may be cured by a remittitur, when it does not appear that such verdict was the result of passion or prejudice." We cannot agree that the verdict of the jury, less the remittitur, is still so excessive and so unreasonable as to require a new trial on the issue of damages. See 3 Am. Jur., Appeal and Error, Sec. 893, p. 452.

██ █ The cross-appellant complains that an insurance agent was permitted to testify as an expert with reference to the income from an annuity, and which

is said to be inaccurate and misleading. The general rule of evidence requires the admission in evidence of all facts and circumstances which are relevant to the issue and afford reasonable inferences or throw light upon the matter in issue, and are not inadmissible because of some exclusionary rule of evidence. The American Jurisprudence textwriter uses the following language in presenting this point: "Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other of the parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue is relevant and admissible." 20 Am. Jur., Evidence, Sec. 247, p. 240. Sec. 1183, p. 1033, of the same text uses the following language: "The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy all probative value."

██ ██ On appeal to the Supreme Court from a trial court, the appellate court will indulge in all reasonable presumptions in favor of the validity and regularity of the proceedings below and the judgment rendered thereon, unless the record shows affirmatively some improper or prejudicial ruling as to the introduction of evidence, it must be presumed that none was made. 3 Am. Jur., Appeal and Error, Sec. 937, p. 502. ██ ██ The evidence with reference to the annuity value was therefore admissible, but the weight and worth of the testimony is a question for the jury. Sec. 1530, Miss. Code 1942, Rec.

██ ██ The cross-appellant has complained of an instruction granted plaintiff and given to the jury with reference to the inability of the plaintiff to testify because of the so-called "dead man's statute" (Sec. 1690,

Miss. Code 1942, Rec.) It is apparent to us, however, that this instruction was granted by the trial judge because of certain statements made to the jury by the attorneys for the appellant and for appellee while the jurors were being qualified on their voir dire, and we do not consider this instruction error, and if it were erroneous it was not such prejudicial error as to require reversal of this case.

We are of the opinion, and so hold, that the trial judge was correct in granting a new trial, on the question of damages alone, ''unless the plaintiff agreed to enter a remittitur in the sum of $15,000.00.''

This case will therefore be affirmed on direct and cross-appeals, and remanded for a new trial on the question of damages only, unless the plaintiff enters a remittitur, in the sum of $15,000, on or before the 27th day of March 1962.

Affirmed on direct and cross-appeals, and remanded unless appellant enters a remittitur in the sum of $15,-000.00.

*Lee, P. J.,* and *Arrington, Ethridge* and *McElroy, JJ.,* concur.