# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00433-SCT

### CONSOLIDATED WITH

### NO. 2006-CA-00329-SCT
### AND
### NO. 2007-M-01622-SCT

*PINECREST, LLC AND MASTERCARE, INC.*

*v.*

*EULA JANE HARRIS, EXECUTRIX OF THE ESTATE OF MYRTLE R. CALLENDAR, FOR THE USE AND BENEFIT OF THE ESTATE OF MYRTLE CALLENDAR, AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF MYRTLE CALLENDAR*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2008 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CHARLES R. WILBANKS, JR. |
| | EUGENE A. SIMMONS |
| | MATTHEW ROBERT DOWD |
| | JAMES D. SHANNON |
| ATTORNEYS FOR APPELLEES: | ANTHONY LANCE REINS |
| | CAMERON CHRISTOPHER JEHL |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE CARLSON, P.J., DICKINSON AND RANDOLPH, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.	Eula Jane Harris, executrix of the estate of Myrtle R. Callendar, for the use and benefit of the estate of Myrtle Callendar, and for the use and benefit of the wrongful-death beneficiaries of Myrtle Callendar ("Harris"), filed suit against several defendants, including Pinecrest, LLC, and Mastercare, Inc. (collectively, "Pinecrest"), in the Circuit Court of Copiah County, alleging negligence and wrongful-death claims as a result of the alleged negligent supervision of decedent Myrtle Callendar at Pinecrest's nursing home. A Copiah County jury found unanimously for Harris and awarded damages of $750,000, and the trial court entered its judgment consistent with the jury verdict. Pinecrest filed its Motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial or, in the further alternative, for remittitur. The trial court denied the motion for JNOV but granted the motion for a new trial. Harris filed a motion for recusal of the trial judge, who recused; therefore, this Court appointed a special judge to preside over the remainder of the proceedings in this case. Harris subsequently filed her motion for relief from order granting new trial, which the special judge granted, thus reinstating the jury verdict. As a result, Pinecrest perfected this appeal. Finding error, we reverse and remand for a new trial.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.	Myrtle Callendar, a resident of Pinecrest Guest Home, fell and fractured her hip at the nursing home. Approximately twenty-three days later, Callendar died. On December 26, 2002, Harris filed suit against Pinecrest alleging negligence, medical malpractice, fraud, and breach of fiduciary duty. The trial of this matter took place March 28-30, 2006, in the Circuit Court of Copiah County, Judge Lamar Pickard presiding. The jury returned a unanimous

2

verdict in favor of Harris, awarding damages in the amount of $750,000. At trial, Harris introduced a Mississippi Department of Health (MDH) survey from February 2002 in an attempt to establish that Pinecrest had notice and knowledge of inadequate supervision issues. The survey involved a prior incident at Pinecrest in which a resident left the grounds. Judge Pickard admitted a redacted version of the survey with a limiting instruction; however, Pinecrest questioned a witness about the survey findings, thereby opening the door for the admission of an unredacted copy of the survey.

¶3. The trial court entered its final judgment dated April 17, 2006, and on April 26, 2006, Pinecrest filed its Motion for JNOV or, alternatively, for a new trial or, in the further alternative, for remittitur, along with its memorandum of authorities in support. Pinecrest argued in its motion that "[a] new trial should be ordered on the grounds that evidence of an unrelated finding of inadequate supervision in February, 2002, was allowed into evidence, as proof of notice of inadequate supervision . . . . any probative value was outweighed by the obvious prejudicial harm." Harris filed her response on May 24, 2006, and Pinecrest filed its rebuttal on June 2, 2006. On October 23, 2006, Pinecrest filed its supplemental motion for JNOV or, alternatively, for a new trial or, in the further alternative, for remittitur, and Harris filed a motion to strike. Harris also filed her response to Pinecrest's supplemental motion on December 4, 2006.

¶4. A hearing was held March 5, 2007, at which time Judge Pickard denied Pinecrest's motion for JNOV; however, Judge Pickard granted a new trial, stating that the introduction into evidence of the MDH survey "not only could but did lead to bias, passion and prejudice

3

on part of the jury, and I feel like that error was so significant because of the nexus that it had to the very issue in this particular lawsuit that I think it is reversible."[1] On May 3, 2007, the trial court entered its order setting aside judgment. As a result, Harris filed a petition for interlocutory appeal, which this Court denied on June 13, 2007. On August 28, 2007, the trial court entered a subsequent order granting new trial and setting aside judgment. Again, Harris filed a petition for interlocutory appeal which this Court also denied on November 20, 2007.

¶5. While the second petition for interlocutory appeal was pending in this Court, Harris filed her motion for recusal of Judge Pickard in the trial court, arguing *inter alia* "that a reasonable person, knowing all of the circumstances existing in this matter, would harbor doubts about and question the impartiality of Judge Pickard in this matter." On January 22, 2008, Judge Pickard entered an order recusing himself and stating that "due to the simple fact that the Motion under consideration was filed, and in order to relieve any parties' reservations relating to the matters contained in the Motion, although without merit, the undersigned Circuit Judge does hereby recuse himself . . . ." Based on Judge Pickard's recusal, this Court appointed Judge David H. Strong as special judge to preside over the remainder of the proceedings in this case.

¶6. Subsequently, on April 2, 2008, Harris filed her motion for relief from order granting new trial, and Pinecrest responded. After a hearing on Harris's motion, Judge Strong

---

[1]A subsequent hearing was held April 2, 2007, on Harris's motion for hearing and for clarification.

presiding, the trial court entered an order granting Harris's motion for relief from order granting new trial, wherein the trial court vacated and set aside the trial court's previous order granting new trial and setting aside judgment entered by Judge Pickard, thus reinstating the jury verdict. The trial court also denied Pinecrest's motion for remittitur on March 3, 2009. Pinecrest has appealed to us.

## DISCUSSION

¶7.    Pinecrest presents five issues for this Court's consideration: (1) whether Judge Strong, as a "successor judge," had the authority to vacate Judge Pickard's grant of a new trial; (2) whether exceptional and compelling circumstances existed pursuant to Mississippi Rule of Civil Procedure 60(b)(6) for vacating Judge Pickard's order; (3) whether the admission of the 2002 Mississippi Department of Health survey was reversible error and resulted in unfair bias, passion, and prejudice of the jury; (4) whether the verdict was excessive as a result of bias, passion, or prejudice or was contrary to the overwhelming weight of the credible evidence, entitling Pinecrest to a remittitur; and (5) whether the jury's verdict as to liability was against the overwhelming weight of the credible evidence. However, we conclude that the issue of whether Judge Strong erred in vacating Judge Pickard's grant of a new trial is the ultimate issue before this Court. As it is dispositive in today's case, only this issue will be addressed.[2]  The issue is restated for the sake of discussion.

---

[2]The remaining issues, not addressed by today's discussion, are preserved, if necessary, for appeal after the new trial in this matter.

5

**WHETHER JUDGE STRONG, AS A SUCCESSOR JUDGE, ERRED IN VACATING JUDGE PICKARD'S ORDER GRANTING A NEW TRIAL.**

¶8.     Pinecrest argues that Judge Strong, appointed as a special judge after Judge Pickard's recusal pursuant to Mississippi Code Section 9-1-105, did not have the authority to vacate Judge Pickard's prior order granting a new trial. *See* Miss. Code Ann. § 9-1-105 (Supp. 2009). When reviewing questions of law, our familiar standard of review is *de novo*. *See Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222, 1226 (Miss. 2006) (citing *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 945 (Miss. 2000)). This Court has stated that "[w]ith respect to a prior order granting a new trial, based, at least in part, on observations made during trial, however, deference should be given to the judge who observed the evidence as it was presented." *Amiker*, 796 So. 2d at 947. Also, this Court has stated that "on the motion for a new trial the presiding judge of that court, who had heard the testimony and observed the demeanor of the witnesses on the stand, was better qualified to pass on that question . . . ." *Ill. Cent. R.R. Co. v. Humphries*, 170 Miss. 840, 155 So. 421, 424 (1934).

¶9.     In today's case, Judge Pickard presided over the trial of this matter. During trial, a Mississippi Department of Health survey was entered into evidence on behalf of Harris to establish that Pinecrest had notice and knowledge of inadequate-supervision issues at its nursing home. The survey revealed a prior incident at the nursing home in which a resident had left the premises. Judge Pickard admitted a redacted version of the survey with a limiting instruction; however, Pinecrest questioned a witness about the survey findings, and

6

the entire survey was thereby admitted.  At a post-trial hearing, Judge Pickard stated, as

follows:

> [W]e have the record, and my law clerk has gone over it with a fine tooth
> comb, and frankly, it's seldom that this occurs, but my law clerk has come up
> with numerous assignments -- first of all, with respect to your JNOV, it's
> denied.  I'll deny your JNOV.  With respect to the motion for a new trial, my
> law clerk found numerous errors that I had made, and it frankly kind of made
> me feel bad that I messed up that much in one trial . . . .  However, there's one
> issue that was raised during trial that I knew immediately upon the trial ending,
> and frankly, had the motion been made at the end of the trial, I would have
> taken that up at that time, but there was a document the court introduced into
> evidence that was objected to . . . .
> . . .
>
> In short, I feel that the document, after reviewing all of the evidence in the trial
> and after looking at the entire situation with the trial, I feel like the court erred
> in introducing that document.  I also feel that the court -- that the introduction
> of that document not only could but did lead to bias, passion and prejudice on
> part of the jury, and I feel like the error was so significant because of the nexus
> that it had to the very issue in this particular lawsuit that I think it is reversible,
> and I feel like the court has committed reversible error in allowing that
> document.

At a later hearing, Judge Pickard further stated:

> I believe the court was in error in admitting this document.  I do think that you
> were correct in that the court did do what it could to prevent it, took
> precautions to limit the effect of introduction, but in looking at the document
> itself, it never should have been introduced.  And I feel like the court
> committed an error in introducing that document . . . . In reflecting over that
> document during the trial – this is something that came up – frankly didn't
> come up during your motion for a new trial, and I think there was another
> lawyer in the motion for a new trial.  This is something that occurred during
> the trial itself . . . . I felt it committed reversible error.  The reason is because
> I feel like that the document was extremely prejudicial.  Its probative value
> was very limited, if any, in this situation.

7

¶10. This Court's decision in *Amiker* undoubtedly is analogous to the present matter. In *Amiker*, a jury trial resulted in a verdict for the defendants, and post-trial motions resulted in the presiding trial judge granting a new trial. 796 So. 2d at 943. The defendants filed motions requesting the presiding trial judge to reconsider his order granting a new trial, and the presiding trial judge denied these motions. *Id.* at 945. The defendants then filed with this Court a petition for interlocutory appeal, which ultimately was denied; however, while the petition was pending before this Court, the presiding trial judge retired and the judge appointed by the Governor to fill this judicial vacancy granted the defendants' second motion to reconsider the presiding trial judge's order granting the plaintiffs' motion for a new trial.[3] *Id.* at 947. This action by the newly-appointed judge, as the successor judge, resulted in the reinstatement of the jury verdict in favor of the defendants. *Id.* In addressing this issue and finding error on the part of the successor judge in setting aside the presiding trial judge's order granting a new trial, this Court stated:

> It has long been recognized that the trial judge is in the best position to view the trial. "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire." *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985). Using a cold, printed record of a case, if that, a successor judge sits in an inferior position to the judge who presided over the trial of the case.
>
> Where the presiding trial judge grants a new trial, not specifically and solely based on a particular legal error such that we can say that the judge's view of the credibility of the witnesses played no part in the decision, a successor

---

[3]This action by the successor judge was taken after this Court had denied the defendant's petition for interlocutory appeal.

judge is in no position to review and change that order. To do so would be an abuse of the discretion granted the successor judge under M.R.C.P. 63.

"It has been said that on such a motion [for a new trial] the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (quoting Wright, Federal Practice & Procedure: Criminal § 553, at 487).
. . .

If we allowed a successor judge to change a decision granting a new trial, we would invest power in one in no better position than this Court to do what this Court does not do. This Court justifiably refuses to review grants of a new trial based in part on the superior position of the trial court to decide such matters. *Dorr v. Watson*, 28 Miss. 383, 395 (1854) ("The granting a new trial rests in a great measure upon the sound discretion of the court below, to be exercised under all the circumstances of the case with reference to settled legal rules as well as the justice of the particular case. If a new trial be refused, a strong case must be shown to authorize the appellate court to say that it was error; and so, if it be granted, it must be manifest that it was improperly granted."). *See also Rayner v. Lindsey*, 243 Miss. 824, 832-33, 138 So. 2d 902, 905-06 (1962). Surely, a successor trial judge is in no better position than this Court.

[The newly appointed judge] was the lawful successor to [the retiring presiding trial judge] and the only judge in a position to hear the merits of the second Motion to Reconsider. However, this did not give [the successor judge] unbridled discretion. Accordingly, we hold that a successor judge does not possess the power to vacate an initial judge's order granting a new trial where, as here, the successor judge sits in an inferior position to the first judge.

*Id.* at 947-48. In today's case, Judge Strong likewise sat "in an inferior position to the first judge" and did not have "unbridled discretion," and therefore, "did not possess the power to vacate [Judge Pickard's] order granting a new trial." *Id*. at 948. This is especially true where the record is devoid of any exceptional and compelling circumstances. *See* Miss. R. Civ. P. 60(b)(6).

9

¶11.    Judge Pickard, not Judge Strong, or this Court, observed the entire trial, all witnesses, and the jury. Judge Pickard was, without question, in the best place to judge the prejudicial effect of evidence and to judge whether any evidence led to bias, passion, and prejudice on the part of the jury. Thus, Judge Pickard was in a far superior position to determine the necessity of a new trial, and the trial court's Order Granting New Trial and Setting Aside Judgment must be reinstated.

¶12.    Based on the facts and circumstances peculiar to this particular case and our disposition today, we feel compelled to close with these comments. First of all, Judge Strong was not in a situation of his own choosing – he was appointed as a special judge in this case by order of this Court after Judge Pickard recused himself from these proceedings. Judge Strong no doubt had to "take the situation as he found it" upon his appointment by this Court, and proceed to address the issues squarely before him. However, the convoluted status of this case at the time Judge Strong first made his appearance was a direct result of Harris's counsel inappropriately seeking relief by successfully bringing about recusal of the presiding trial judge after an adverse ruling and then going to the successor judge to seek relief from the order granting a new trial. We condemn this practice except in the very rarest of occasions when extreme circumstances not present in today's case might exist. Likewise, it must be noted that the record establishes no basis for Judge Pickard's recusal. In fact, Judge Pickard specifically found that the motion for recusal filed by Harris's counsel was without merit, but he still recused himself. While we appreciate Judge Pickard's efforts to assure fairness, and while judges unhesitatingly should recuse themselves when required by our

10

constitution, laws, and/or judicial canons to do so, we implore our trial judges to recuse themselves from a case only when the facts and circumstances of the case truly mandate such recusal.

**CONCLUSION**

¶13.    For the reasons stated, the successor judge's order granting Harris's Motion for Relief from Order Granting New Trial is reversed, the presiding trial judge's order granting a new trial is reinstated, and this case is remanded to the Circuit Court of Copiah County for a new jury trial on the merits.

¶14.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. KITCHENS, J., NOT PARTICIPATING.**

11