## EDWARD BURRAGE v. W. R. MELSON et ux.

1. REPLEVIN BY MISSISSIPPI STATUTES.—In this state, the action of replevin extends to any wrongful taking or wrongful detention of personal property; and the spirit of the statutes intends that the remedy by this action shall be complete in providing for the recovery of the property and also compensation for the injury.

2. SAME—MEASURE OF DAMAGES—PRACTICE.—When consequential damages are claimed, which do not necessarily and naturally result from the tortious act, they must be specially alleged.

ERROR to the circuit court of Copiah county. MILSAPPS, J.

The opinion of the court contains a statement of the case.

*C. E. Hooker* and *W. & J. R. Yerger,* for plaintiff in error.

The assessment of damages is a matter to be left entirely with the jury to determine, and unless their finding is grossly extravagant, or the damages palpably inadequate, the court has no right to interfere. The action of the court, therefore, in correcting the verdict was error. The only remedy for a wrong verdict is by setting it aside, and not by correction, by way of reducing the amount which the jury have assessed.

The damages, even after being cut down by the court, are excessive. As to the damages recoverable by the plaintiff, they are for the detention of the property of which interest on its value is ordinarily the measure. 43 Miss. 556; 43 ib. 598; 41 ib. 368; 40 ib. 352; 42 ib. 607; 38 ib. 348. He is also entitled to compensation for any deterioration in the value of the goods replevied while they were in the hands of the defendant. Sedgwick on Damages, 502. The measure of damages is not the amount which the plaintiff expended in counsel fees, in the prosecution of her claim to the property, her traveling expenses, etc., etc. Ib. 519; Hinds v. Ferry, Walk. 84; Texada v. Camp, ib. 150; 40 Miss. 352.

*H. B. Mayes*, for defendants in error.

The remitter was properly entered where the finding of the jury did not sufficiently specify the value, and to bring the amount of the recovery in the penalty of the replevin bond. Anderson v. Tarpley, 6 S. & M. 507; Young v. Englehard et al. 1 How. (Miss.) Green v. Robinson, 3 ib. 117–121; Hurd v. Germany, 7 ib. 675; 5 ib. 286.

As Burrage professes to have acquired the title of Mrs. Melson after she had confided the property to him, and whilst it was thus in his possession, it was incumbent on him to show distinctly his purchase, and that it was in all respects just and fair. Jones et ux. v. Smith et al. 33 Miss. 264.

The amount of damages were not excessive, but are sustained by the proof. Whitfield v. Whitfield, 40 Miss. 369; Briscoe v. McElwee, 43 ib. 556; Hewett v. Cobb. 40 ib. 62.

TARBELL, J.:

Replevin by Sarah A. Melson and William R. Melson against Edward Burrage, to recover possession of various articles of personal property, consisting of household furniture, etc. The declaration alleged the property to be worth $1,500, and claimed damages in addition for the detention. The defendant pleaded the general issue. The jury returned a verdict, assessing the value of each article of property, and awarding $1,200 damages. There was a motion for a new trial, based on the ground that the verdict was contrary to law and evidence; that the jury erroneously included a cow and calf in their verdict; that the damages were excessive; that the court erred in giving instructions, and because the verdict was in excess of the penalty of the forthcoming bond. Thereupon the plaintiffs remitted the finding for the cow and calf, three pillows, one bolster, seventeen chairs, and $649 of the damages for detention. The motion for a new trial was then overruled and judgment rendered upon the finding of the jury, after deducting the items and sums remitted by plaintiffs. From this judgment the defendant in the action prosecuted a writ of error. In this court the following errors are assigned: That there was error in refusing to grant a new trial, in giving instructions for the plaintiffs in the court below, and in the rendition of the judgment which was entered.

On the trial there were only two instructions for the plaintiffs and two for the defendants, and they are as follows:

For plaintiffs: "1. If the jury believe from the evidence that Mrs. Melson believed that Mr. Melson was

her husband, and that she referred Burrage to him as husband, to contract as such, they may infer that she intended the contract to be executed in conformity to the law regulating the conveyance of the separate estate of married women; and if, under these circumstances, Burrage was contracting with her as wife, and the conveyance was not made in conformity to law, it was incomplete for want of her assent, and passed no title to Burrage.

" 2. The court instructs the jury that, although they may believe from the evidence that Melson sold the property in this suit to Burrage, and if they believe from the evidence that Sarah A. Melson did not authorize Melson to sell the same, and she has in no manner ratified the supposed sale, they should find for plaintiffs."

For defendants: " 1. If the jury believe from the evidence that Wm. R. Melson had a wife living at the time he married the plaintiff, then his marriage with the plaintiff, Sarah A. Melson, was void, and she is, in legal contemplation, a single woman, and may contract by herself or any agent as a man could contract, and if the jury further believe from the evidence that Mrs. Melson, the plaintiff, told Burrage, the defendant, that any trade he might make with Melson for the property would be right with her, and that Burrage afterwards bought and paid for the property in controversy from Melson, under and in consequence of Mrs. Melson so saying, then Burrage is the legal owner of the property, and the jury should find for him.

" 2. When a sale or contract made is in violation of a penal statute, the courts will not disturb either the one or the other in respect to the contract or sale, and will leave the subject of the sale or contract where it is, the condition of the defendant being in such case the best."

It appeared on the trial, that Wm. R. Melson was

under indictment charging him with bigamy, and that defendant, Burrage, was surety for his appearance. Prior to the trial of the criminal charge, the defendants in error determined to remove from this state to Texas. Prepatory to their removal, they sold to the plaintiff in error the plantation of Mrs. Melson. Thereupon, according to the evidence, began a series of negotiations between Burrage and Wm. R. Melson. Mrs. Melson says she left the property in litigation with Burrage, with his assent, to be delivered to her when she should call for it after finding a new home. Burrage insists that he bought it of Wm. R. Melson, with the approbation of Mrs. Melson. Part of the arrangement between Mr. Melson and Burrage was to indemnify the latter as surety for the former. For this purpose, Melson had placed in the hands of Burrage a note much larger than the liability upon the bond. The latter complains that, in order to obtain satisfactory receipts and titles, he was compelled by the former to make repeated advances of money, not called for by their agreement. The jury was authorized by the evidence in believing that if Burrage obtained from Wm. R. Melson a bill of sale of the property in controversy, and a receipt of payment therefor, such title and receipt were in fraud of Mrs. Melson. There were several witnesses on each side, and the testimony is fully conflicting on all points. There was evidence to show that Wm. R. Melson had another wife living, and upon this it was urged that the marriage of the plaintiffs in the action was void. The object of this evidence was to establish Wm. R. the agent of Sarah A. Melson in the sale of the property involved in the case at bar. It appeared, however, that Burrage has recognized the Melsons as man and wife, socially and in business. There was evidence on the part of Burrage of notice to Mrs. Melson of the purchase by him of her personal property of Mr. Melson, but this testimony was directly contradicted by

persons present on the occasion of the alleged notice, greatly preponderating in number. Indeed, the verdict is in accordance with the decided weight of the testimony, as well in the number of witnesses as in the character which the evidence gives to the conduct of Burrage in connection with the property herein sued for.

·The evidence for the defendant below presents two points of defense, viz.: That whether married or single, Wm. R. Melson was the agent of Sarah A. Melson. Burrage testified that Mrs. Melson referred him to Mr. Melson, with the assurance that any trade they might make would be ratified by her, upon which assurance he testified he purchased the property in question of Mr. Melson. The evidence shows clearly that Burrage negotiated and traded with the Melsons upon the theory of their being man and wife. Upon the whole testimony the jury were fully justified in disbelieving the evidence for the defense, or in giving superior credit to that for the plaintiffs in the action.

It is urged, that the first instruction for the plaintiffs on the trial is erroneous. As we understand it, and as it is qualified by the other instructions, it is not far, if at all, out of the way. The facts presented to the jury these questions: 1. Did Burrage buy this property at all? Of this there were grave doubts upon the testimony. Very likely the jury did not believe there was, in fact, a sale of or payment for this property, and if so, we are not satisfied but that they were right. 2. Was Wm. R. Melson authorized by Mrs. Melson, as her agent, to sell, convey, and receive pay for this property? By their verdict, the jury answered this question in the negative, and this is the conclusion to which an impartial review of the facts conducts the mind. 3. Did Mrs. Melson, if she referred Burrage to Mr. Melson at all, confer on the latter, in fact and to the knowledge and understanding of Burrage, only a limited

agency to sell this property, subject to her approval, and so understood by Burrage?   If yea, there is no evidence of her ratification of the sale, if made, or that she received the purchase money.

The instructions submitted to the jury substantially these propositions: 1. Whether Mrs. Melson did not refer Burrage to Mr. M. as her husband, with the understanding that their trade, if any, was to be in conformity with the married woman's law.   If so, this conferred upon Mr. M. only a limited agency, known to Burrage, and so title never passed for the want of her ratification.   This indicates one construction of the first instruction for the plaintiffs in the action, and as it was doubtless understood by the jury.   2. Treating the Melsons as unmarried, was Wm. R. the agent of Sarah A. for the sale of this property?   3. Was there a sale, in fact, by Wm. R. Melson to Burrage?

Upon the facts the jury found for the plaintiffs in the action, and, as we think, in accordance with the justice of the case.   Whatever of error was committed by the jury was remitted by the plaintiffs as practice sanctioned by precedent.

*Judgment affirmed.*

Whereupon, plaintiff in error moved to grant a re-argument herein.

*C. E. Hooker* and *Nugent & Yerger*, for the motion.

*H. B. Mayes*, contra.

TARBELL, J.:

Petition for re-argument.   The opinion in this case sustained the verdict of the jury upon the facts exclusively, and now a review is asked upon the sole ground, that in the form of action (replevin), punitive damages are unauthorized, unless the fraud, oppression,

malice, or other cause constituting the basis of such damages are set forth in the declaration. As to this, a few words may be advisable.

The declaration states the value of the property at $1,500, and the damages for the taking and detention at $1,500. The jury assessed the value of the property replevied, at $453, and awarded $1,200 damages. The plaintiff in the action remitted the value of the property to $401, and the damages to $551.

The precise points now presented have been adjudicated, in other states, adverse to the theory of the plaintiff in error.

Exemplary damages may be given in replevin, either for the plaintiff or for the defendant, according to the facts, as in actions of torts generally. 11 Penn. St. 38; 46 ib. 438; 1 Jones, 381; 6 S. & R. 426; 21 Wend. 144; 20 ib. 172, 223; 15 ib. 368; 10 Johns. 378; 7 W. & S. 513; Morris on Replevin, title, Damages; Sedg. on Damages, 520, 582, 577.

In one case the jury assessed the value of the property at $500, and, in addition, damages to the amount of $500. In another, the jury found for the defendant, with $6,000 damages for suing out the writ. New trials were refused on the ground that the question of damages was for the jury.

The cases proceed upon the general doctrine, that though the action of replevin is usually for goods wrongfully taken by way of distress, the action with us lies for any wrongful taking, or wrongful withholding, and hence, that it is in accordance with the spirit of our laws that as a remedy this action should be complete. To be so, it is said, it must provide full compensation for the injury done in the taking or withholding of the property, without putting the party to another action in order to obtain a full recompense for the wrong. If there is a wrongful taking, he should get back his property, and legal damages for

the wrongful taking.  So for a wrongful withholding. And this, it is said, accords with the construction given to the remedy of trover, which lies properly for a wrongful withholding, and yet, in this action the circumstances of the taking are allowed to weigh in assessing the damages.  In replevin the same liberal construction is given, in order to make the remedy complete.  Thus, the action of replevin is likened to the action of trover, to which it is strictly analogous.  In the choice of remedies, as between replevin and trover, or trespass, the preference is with the former, in this, that it restores the property itself, and no good reason can be given why, in the same action, in addition to a restoration of the goods, damages should not also be awarded, to be governed by the same rules as in the ordinary actions of tort.  40 Miss. 352.

As to the particular point presented on this petition, that the grounds of punitive damages ought to have been specially averred in the declaration, we apprehend the rule to be substantially this:  If consequential damages are claimed, not necessarily or naturally resulting from the tortious act, they must be specially alleged.  But when the circumstances on which exemplary damages are claimed attended the taking or withholding, they belong to the wrongful act itself, and are not merely special injury.  46 Penn. St. 438; 20 Wend. 223; 21 ib. 144; 46 Miss. 458.  Hence the same authorities hold that the rules of pleading do not require the circumstances, when attending the taking or detention, to be specially averred in order to entitle the plaintiff to recover damages commensurate with them.  46 Penn. St. 438; 46 Miss. 458.

The questions referred to are not unfamiliar to the courts of this state, though not before presented in this form of action.  They have all been substantially adjudicated.  24 Miss. 166; 44 ib. 254; 40 ib. 356; 43 ib. 556; ib. 598; 46 ib. 458.  See, also, cases cited

in notes to Sedgwick on Damages, and in Morris on Replevin.

With this theory of the law and our view of the facts remaining unchanged, the petition for a re-argument is denied.