SAMUEL GARBER v. PALMER, BLANCHARD & COMPANY.

FILED MARCH 18, 1896.   No. 6350.

</div>

1. **Replevin: DISMISSAL.** A plaintiff in an action of replevin, who has obtained possession of the property under the writ, cannot be permitted, without the consent of the defendant, to dismiss the action.

2. ———: RIGHT OF DEFENDANT TO TRIAL: DAMAGES. When a plaintiff in replevin who has obtained the property fails in his proof or fails to prosecute the action, the defendant is entitled to judgment, and to a trial of his right of property or possession, for the purpose of establishing his damages.

ERROR from the district court of Webster county. Tried below before BEALL, J.

The issues are stated by the commissioner.

*James McNeny*, for plaintiff in error:

The order of the court sustaining the motion of defendant in error to dismiss this cause was erroneous. In an action of replevin both parties are actors. On the plaintiff's failure to prosecute, the defendant becomes the real plaintiff in the action. (*Aultman v. Reams*, 9 Neb., 487; *Moore v. Herron*, 17 Neb., 697; *Wilson v. Wheeler*, 6 How. Pr. [N. Y.], 49; *Broom v. Fox*, 2 Yeates [Pa.], 530; *Long v. Buckeridge*, 1 Str. [Eng.], 106; *Marshall v. Bunker*, 40 Ia., 121; Wells, Replevin, 195; *Jewell v. Lamereaux*, 30 Mich., 155; *Reed. v, Carpenter*, 2 O. 79; *Ahlman v. Meyer*, 19 Neb., 63; *Dahler v. Steele*, 1 Mont., 206; *Berghoff v. Heckwolf*, 26 Mo., 512; *Kennedy v. Beck*, 15 Kan., 555; *Ranney v. Thomas*, 45 Mo., 112; *Dowling v. Polock*, 18 Cal., 625; *Mikesill v. Chaney*, 6 Porter [Ind.], 52; *Leese v. Sherwood*, 21 Cal., 151.)

No appearance for defendant in error.

IRVINE, C.

This was an action in replevin by Palmer, Blanchard & Co., a corporation, against Garber for 300 head of cattle alleged to be worth $8,000, and appraised at $5,000. The answer was a general denial. After each side had rested its case the plaintiff moved the court "to dismiss this action without liability to the defendant herein." Whereupon the following order was made: "On consideration whereof the court sustains said motion, and it is hereby considered, ordered, and adjudged that said action be, and the same is hereby, dismissed at plaintiff's costs. And it is further considered and adjudged that said plaint-

iff be, and he is hereby, discharged from all lia-
bility to defendant herein. Defendant thereupon
asks that the cause as to him be submitted to the
jury upon the evidence and the instructions sub-
mitted to the court. On consideration whereof the
court refuses to grant said application. And the
court further refuses to grant any other motion
or application on the part of the defendant, and
refuses to make or render any other ruling, find-
ing, or judgment save and except the above." It
appears, not from the record proper, but from
the bill of exceptions, that the property had been
delivered to the plaintiff under the writ.

The evidence discloses that Garber and one
Higby, who was cashier of the Farmers & Mer-
chants Banking Company of Red Cloud, made an
arrangement with Palmer, Blanchard & Co., who
were live stock commission men at South Omaha,
whereby the Farmers & Merchants Bank issued
a letter of credit in favor of Garber, on the faith
of which Garber bought the cattle in controversy
in New Mexico, drawing on the bank for the pur-
chase price. The agreement was that the South
Omaha National Bank should issue to the Farm-
ers & Merchants Bank a corresponding letter of
credit; that Garber should secure advances by
Palmer, Blanchard & Co. by chattel mortgage;
that the Farmers & Merchants Bank should, in
pursuance of its letter of credit, honor Garber's
drafts for the purchase money, and that on the
execution of the mortgages, drafts should be
drawn, with the mortgages attached, which
should be paid by Palmer, Blanchard & Co. The
details of the latter part of the agreement were
not made clear, nor are they material. It suffi-
ciently appears that through some arrangement

then made, Palmer, Blanchard & Co. were, upon
being secured by chattel mortgages executed by
Garber, to pay the advances made by the Farm-
ers & Merchants Bank to him. When the cattle
arrived in Nebraska, Garber executed two mort-
gages, each of which covered 150 head of cattle;
one for $5,000, the other for $2,435.17. These
were delivered to the bank, together with notes
representing the debt, and a draft was drawn
on Palmer, Blanchard & Co. for the amount.
Palmer, Blanchard & Co. refused to accept the
draft, claiming that the mortgages should have
covered certain hogs and corn in addition to the
cattle. After Palmer, Blanchard & Co had re-
fused to accept the draft Garber prepared to ship
the cattle for sale to Kansas City, when this
action was instituted. It is quite evident that
officers of the bank instituted the action; but Mr.
Blanchard, representing Palmer, Blanchard &
Co., appeared on the scene the next morning, and
joined in the replevin bond. On the trial he tes-
tified to the foregoing facts, and testified dis-
tinctly and positively that his company had re-
fused to accept the mortgages, and that it had no
interest in or claim upon the cattle. It was on this
state of facts that the court, on plaintiff's motion,
dismissed the action and forbade the defendant
the privilege of proving his damages. That error
was committed is self-evident, but there is the
difficulty in stating reasons for reversal which
always attends an attempt to demonstrate an
axiom. The district court may have proceeded
upon the theory that section 430 of the Code gives
the plaintiff in every action a right to dismiss
without prejudice at any time before final sub-
mission; but this provision does not apply to

actions of replevin.   In replevin, where the prop-
erty is delivered to the plaintiff, he practically
obtains his execution before judgment.   He ac-
complishes the main object of his suit through
the preliminary process of the court.   It is some-
times said that both parties then become actors.
The plaintiff has taken the property, and the
burden falls upon him of establishing his right
thereto; and unless he recovers on the strength
of his own title, the defendant is entitled to judg-
ment for the return of the property or for its
value.   He can no more abandon the case than
can a defendant in an action of trover.   It is
true that section 190 of the Code provides that
where judgment is rendered against the plaintiff
on demurrer, or if the plaintiff otherwise fail to
prosecute to final judgment, the court shall im-
panel a jury to inquire into the right of property
and right of possession of the defendant; and if
the jury be satisfied that either was in the de-
fendant, they shall assess such damages as may
be right and proper; but this section is enacted
for the purpose of an assessment of damages,
such as a plaintiff is entitled to on default in
ordinary actions.   The defendant is entitled to
judgment unless the plaintiff proves his own title.
(*St. John v. Swanback*, 39 Neb., 841; *Jenkins v.
Mitchell*, 40 Neb., 664; *Kavanaugh v. Brodball*, 40
Neb., 875; *Peterson v. Lodwick*, 44 Neb., 771; *Jo-
hannson v. Miller*, 45 Neb., 53.)   In case the plaint-
iff, by failure of evidence, or by failure to prose-
cute his case, fails to establish such affirmative
right in himself the defendant is entitled to the
procedure accorded by section 190, not for the
purpose of establishing his right, but for the pur-
pose of assessing his damages.   It follows from the

nature of this action, and from the feature of the plaintiff's securing the property before he has established his right, that he cannot by a dismissal of the action avoid the necessity of making the necessary proof. He cannot by his own *ex parte* affidavit obtain property in the possession of another and then by dismissal leave the other party without an opportunity to defend his right and without a remedy. The proposition is so evident, the contrary so unjust, so absurd, and so preposterous, that neither argument nor authority should be necessary. Still the question has been several times decided by this court. (*Aultman v. Reams*, 9 Neb., 487; *Moore v. Herron*, 17 Neb., 697; *Ahlman v. Meyer*, 19 Neb., 63.)

The action taken by the court might have been error without prejudice had the plaintiff beyond contradiction established its right; but it did not do so. In the first place the petition stated no cause of action. It alleged a special ownership in the property without setting out the facts in relation thereto. A plaintiff in replevin claiming under a chattel mortgage must allege a special ownership and plead the facts. (*Musser v. King*, 40 Neb., 892; *Randall v. Persons*, 42 Neb., 607; *Sharp v. Johnson*, 44 Neb., 165; *Camp v. Pollock*, 45 Neb., 771; *Strahle v. First Nat. Bank of Stanton*, 47 Neb., 319.) In the second place, the plaintiff absolutely failed to prove ownership, general or special, or right of possession; but, on the contrary, its own evidence was that it had no claim at all, and had refused to accept the mortgages under which alone there was any pretense of a claim. Possibly the district court thought that the evidence showed that the suit had not been authorized by Palmer, Blanchard & Co., and that that

company was not, therefore, the actual plaintiff; but such evidence as was introduced to this effect was not in support of any pleading by Palmer, Blanchard & Co. of such facts; it was not relevant under the issues, except as it might operate in favor of the defendant, and was no ground for dismissing the case without a judgment for defendant. Finally, the evidence showed that while the suit had been begun without authority, Palmer, Blanchard & Co. had certainly ratified the acts of the person commencing it. Blanchard signed the replevin bond. Several continuances were taken on Palmer, Blanchard & Co.'s motion. Palmer, Blanchard & Co. prosecuted the action so far as it was prosecuted. It appears that after the cattle had been taken under the writ they were shipped to Palmer, Blanchard & Co. for sale. They were sold by that company and the proceeds remitted to Higby, who had assumed the indebtedness in favor of the Farmers & Merchants Bank, created by the transaction; but this merely shows that Palmer, Blanchard & Co. ratified the suit, and prosecuted it without a shadow of a claim of right, not for their own protection, but in order to protect Higby, it being explained in the evidence that this course was taken in order to prevent creditors of Garber from reaching the cattle. In brief, the transaction was in consummation of a conspiracy between Higby and Palmer, Blanchard & Co. to seize the cattle without any right thereto and without tangible claim of right, knowing they had no such right, for the purpose of in that way securing payment of a debt of Garber. An inexcusable error was committed. Possibly no party to the case has suffered greatly because the

49

proceeds of the property were applied to the payment of a debt of Garber's; but it is not in such a manner that a creditor can be permitted to obtain a preference.

REVERSED AND REMANDED.