STANDARD FINANCE CORPORATION *v.* BRELAND

No. 42938          April 20, 1964          163 So. 2d 232

414

*M. M. Roberts, R. M. Sullivan,* Hattiesburg, for appellant.

*W. S. Murphy,* Lucedale, for appellee.

Brady, Tom P., J.

On August 8, 1959, appellee, Don Breland, purchased on a conditional sales contract from Fowler Butane Company, on Standard Finance Corporation forms, one 250 gallon propane tank, gas outlets, trim, material, and a Comet heater with connections, which also had written therein the cost of labor for installation in the sum of

$236, plus sales tax and inspection fee, for a grant total of $279.80.

Thereafter, on October 13, 1959, Don Breland purchased on a conditional sales contract from Fowler Butane Company, on Standard Finance Corporation forms, seven Thermolair heaters, together with fittings, valves, and materials, including labor for installation, for a total sum of $211.45, to which was added sales tax and a finance charge, aggregating $258.25.

Thereafter, on March 14, 1960, M. R. Fowler, of Fowler Butane Gas Company, made affidavit, as agent for Standard Finance Corporation, that Don Breland wrongfully detained the 250 gallon propane tank, of the value of $189.50, and materials for gas outlets of the value of $15, and filed same with the justice of the peace, W. P. James, in Cause No. 1514. At the same time, the said M. R. Fowler of Fowler Butane Gas Company, as agent for Standard Finance Corporation, made an affidavit that Don Breland wrongfully detained 6-R. C. 15 Thermolair heaters of the value of $108, one R. C. Thermolair heater of the value of $31.45, and material for seven gas outlets of the value of $50, and filed said affidavits with the justice of the peace, W. P. James, in Cause No. 1513. Writs of replevin in both suits were issued on March 15, 1960, and thereafter the tanks, heaters and material were removed from the tourist cottages of Don Breland off his premises and thereafter these two replevin actions came on for hearing on March 22, 1960, and a judgment was entered in favor of Don Breland on the first cause in the amount of $150 actual damages, together with the sum of $1,250 punitive damages for the malicious and wrongful suing out of the action of replevin; that a similar judgment was rendered in the second cause of action on the heaters in the amount of $150 actual damages, together with the sum of $1,250 punitive damages for the malicious and wrongful suing out of said action of replevin, together with all costs.

These two cases were appealed to the Circuit Court of Greene County from a judgment of the Justice of the Peace W. P. James and, thereafter, on motions, the circuit judge entered an order dated November 14, 1960, dismissing the appeal in Cause No. 1514 of the Circuit Court of Greene County, Mississippi, for lack of jurisdiction, in which the court said:

"It is therefore the order of the Circuit Court of Greene County, Mississippi, that the judgment heretofore rendered in this cause of W. P. James, Justice of the Peace, on March 22, 1960, be and the same are hereby set aside, cancelled and held for naught. It is the further order of the Court that the property involved herein as described in the affidavit be returned and restored to the possession of the defendant, Don Breland." (R. 277-278).

The appellant took a voluntary nonsuit in Cause No. 1513. No appeals were taken from the dismissal of Cause No. 1514 and the nonsuit of Cause No. 1513. No writs of inquiry were issued. The record discloses, as is alleged, that this property was not restored to the defendant, Don Breland, but remained in the hands of the agent of the appellant, Standard Finance Corporation.

On March 1, 1961, the appellant instituted two suits in replevin in the justice of the peace court of Judge James against appellee, and James L. Buchanan who had possession of the property, and these suits were appealed to the Circuit Court of Greene County from adverse judgments and were designated with new cause numbers, 1541 and 1542. Appellee had not made any additional payments under the contract. Cause No. 1541 was dismissed in the justice of the peace court on the ground that it was still pending in the circuit court. This cause was appealed and when this case reached the circuit court, it was dismissed by the circuit judge on the ground that the court had no jurisdiction to proceed

further in that cause, but a motion of the defendant for a writ of inquiry was granted and the case was continued until the next term of the court. The defendant having filed an alleged counterclaim, the plaintiff in replevin was granted time to file an answer to the counterclaim. The appellant demurred to the counterclaim of appellee. At the May Term of court, the other cause, No. 1542, was dismissed by the court as to the plaintiff's declaration and the writ of inquiry was granted to the defendant to be tried at the next term of the court. The alleged counterclaim in this case was continued until the next term of court. The testimony of the claimant, Don Breland, is to the effect that he had made all payments due under the sales contracts before the suits were commenced, and that his payments were up to date; that after these replevin suits were instituted and this property taken from his premises, he made a trip to Hattiesburg to the offices of the Fowler Butane Gas Company and the Standard Finance Corporation and tried to pay the notes that had accrued since the taking of the property; and that Mr. Wilson, employee, refused to accept the same, stating that the matter was in court. Appellee testified that they would not take the money, and that he requested the return of his property from every person with whom he dealt and it was not returned. He testified that he had been paying the Standard Finance Company's agent when he came by his place of business; that he had an agreement with him to go to Hattiesburg and make a payment; that he kept his word and did not owe the Standard Finance Company anything when they replevied his property.

Constable McCoy testified that just after the property was taken Mr. Breland, who had watched the property being disconnected, said:

" 'I got a receipt I want to show you I've paid for the stuff, paid what I owe them.' I said, 'yes, sir, Mr. Breland, I know that but in a conversation with some

of Mr. Fowler's men awhile ago they said they had received some money but they was going to send it back, to go ahead and get the stuff.' He said, 'Well, gentlemen, take it on'. He said, 'you'd be sorry of it.' That is what Mr. Breland said.''

The argument in the case at that point was $9.50 for advance court costs charged to the account of Mr. Breland. One Joe Wilson, who worked for the Standard Finance Corporation, testified that the property was in the hands of the constable and he was under the impression that the court ordered its own officer to restore the property to the defendant, but he admitted that James Buchanan worked for Fowler Butane Gas Company but denied that he worked for the Standard Finance Company. He was asked:

''Q. All right, he was your agent or servant, then? A. Right. * * * A. He was an agent. Q. He was an agent? * * * Q. At the time this happened, he was your agent, was he not? A. That is correct.''

This man was also asked:

''Q. After the replevin was had, did Don Breland ever come and attempt to make any payments on his property? A. He did come to the office and attempted to pay on the contracts. Q. Did you take his money? A. No, sir. Q. Why not? A. Because we did not have his merchandise, we had a contract that was not enforceable, we had attempted to enforce the contract and it was still in litigation. We did not have the merchandise and we did not have a valid contract.''

The witness said that the sale contract carried a cancellation clause which gave them the right to declare the entire balance due and payable on a delinquent account. He said the reason they wouldn't take the payment was because they demanded the entire balance due, and interest.

There is some testimony in the record that Mr. Breland had an agreement with Mr. Lee, who worked for

the Standard Finance Company, that Mr. Breland could pay up his balance due. This was on March 8th and, as shown, the balance was paid up on March 16th.

The record in this case shows that the notes due the Standard Finance Corporation were payable in installments; that on March 14, 1960, Don Breland was in arrears on the payment of the installments due. Appellant filed affidavits in replevin on the separate notes in the Justice of the Peace Court in Greene County, Mississippi. Writes of replevin were issued, but it was late in the afternoon and it was decided to wait until the next day before serving the writs. The constable went to appellee's place of business to serve the writs, and appellee's wife told the constable and Mr. Buchanan that the appellee was in Hattiesburg and would be back in the afternoon, so they decided to wait until that afternoon before serving the writs and taking the property therein described. In the morning of that day the defendant went to the office of appellant, Standard Finance Corporation, to pay the overdue installments, but appellant's agent, H. T. Odom, would not accept the payment on the notes because the matter had been filed in court and there was outstanding and due court cost.

The appellee, at noon, when all but one person had gone to lunch, then proceeded to the main office of Fowler Butane Gas Company and paid the back installments to an extra helper, who worked during the noon hour, and obtained a receipt for the payment. That afternoon when the constable returned he then proceeded to show the constable the property described in the writ, and after the property had been disconnected and taken into possession by the constable the appellee notified the constable he had paid the back installments, and then showed the receipt and said, "You have played Hell." The constable said he already knew that the receipt had been given.

When the two cases came up for hearing, it became known that the value of the butane tank was in excess

of $200.00, and moreover the constable had served the declarations upon the appellee, rather than a copy of the writs of replevin. It also appeared that the constable could not make his return on the writs, showing the service of the writs. Nevertheless, strange as it may seem, the two cases proceeded to trial and the justice of the peace entered the judgments in favor of defendant and required the plaintiff to return the gas heaters and equipment. The Standard Finance Corporation appealed to the circuit court and the circuit court promptly dismissed the replevin suits with reference to the Fowler Butane Gas Company because the value of the property was more than $200.00. The justice court had no jurisdiction of the replevin of the butane gas tank action, and therefore the court had no jurisdiction on appeal in that case. The replevin action with reference to the heaters was nonsuited by the appellant, and although an application for a writ of inquiry was made it was refused by the court and an order was entered directing the constable to return the property to the defendant. No damages were assessed.

The pertinent parts of Sec. 2861, Miss. Code 1942, Rec., are in the following language:

"In case the plaintiff make default in prosecuting the suit, or be nonsuited, the defendant may have a writ of inquiry to assess the value of the property or the damages sustained by the wrongful suing out of the writ, or both, as the case may be; and like judgment shall be rendered upon the finding as upon an issue found for him."

The common-law rule is that, in replevin, defendant cannot move for judgment as in case of nonsuit for failure of plaintiff to proceed to trial. Both parties are regarded as actors in such an action, and either may bring the case to trial. In Mississippi, however, this Court holds that where the defendant recovers a judgment by discontinuance or nonsuit, such judgment

should be that the defendant have return of the property replevied, with damages for the detention. See Bernheimer v. Martin, 66 Miss. 486, 6 So. 326. When a judgment for nonsuit is entered, there remains for trial the issue of wrongful detention and damages sustained.

It is undisputed that the property here remained in the hands of the constable (stored with James L. Buchanan), and neither party gave bond for the property. Therefore, the judgment should have been entered in accordance with Sec. 2862, Miss. Code 1942, Rec. This section is in the following language:

"If bond be not given and the property remain in the hands of the sheriff or other officer, the value of the property and the damages sustained shall be assessed, and judgment shall be for the recovery of the property, and the damages assessed against the party liable, and the sheriff or other officer shall deliver the property to the successful party, and execution shall issue for damages and costs of suit."

The judgment entered upon the nonsuit was a final judgment insofar as requiring the return of the property was concerned, and likewise final insofar as the court's order refusing to allow a writ of inquiry to determine damages due the defendant, if any. This judgment therefore could not be collaterally attacked at a later date. See Murdock Acceptance Corporation v. Smith, 222 Miss. 594, 76 So. 2d 688, 222 Miss. 608, 77 So. 2d 727. The judgment determined the right to the possession of the property at the date of the first judgment. See Perry v. Lewis, 49 Miss. 443. The judgment in the circuit court on the 14th day of November, 1960 dismissed the cause, No. 1514, because the affidavit in the justice of the peace court determined the jurisdiction of that court and it exceeded the sum of $200. The case was therefore dismissed and the court said:

"It is the further order of the court that the property involved herein as described in said affidavit, be returned and restored to the possession of the defendant Don Breland."

██ ██ Although it is true in the case of nonsuit by the plaintiff, (Cause No. 1513 was nonsuited), the defendant is entitled to a judgment for the return of the property, or for its value in case it cannot be returned, but this is not conclusive of ownership or the right of possession, nor does the nonsuit bar a plaintiff from another action for the same property. See Hackett v. Bonnell, 16 Wis. 471; Westcott v. Bock, 2 Col. 335; Walbridge v. Shaw, 7 Cush. 560 (Mass.); Barruel v. Irwin, 2 N. M. 223; Collamer v. Page, 35 Vt. 387; Hill v. Webber, 50 Mich. 142, 15 N. W. 52. Plaintiff's case is left as it was when he instituted his action. Walbridge v. Shaw, supra; and he may bring another action of replevin for the same property. Morton v. Sweetser, 12 Allen 134 (Mass.); Walbridge v. Shaw, supra.

The property was not returned to the appellee Don Breland and he made no further installment payments upon the notes, nor did he try to get possession of the property. Thereafter, on March 1, 1961, new replevin suits were filed in the justice of the peace court against Don Breland and James L. Buchanan. The justice of the peace entered judgment against the Standard Finance Corporation in both suits and appeals were again taken to the circuit court. The circuit judge dismissed the suits because no proof was given or shown that the replevin writs were served. A writ of inquiry was permitted and the case was continued until the next term of court. In the meantime, the defendant filed a counterclaim and the plaintiff filed a demurrer to the counterclaim, pointing out (1) a counterclaim is not a proper plea in a replevin action; and (2) the counterclaim seeks damages arising from a former suit which was terminated by a judgment, from which there was no

appeal and such judgment was res adjudicata. The demurrer was later sustained.

A trial was had upon the writ of inquiry, resulting in the judgment for Don Breland in the sum of $6,500. A remittitur was properly ordered by the trial court, in the sum of $5,000. The defendant refused the remittitur, and a new trial was required. The last trial of the suit resulted in a verdict and judgment in the sum of $12,000 damages, and it is from this judgment that this appeal is prosecuted.

Nine errors are assigned by the appellant, seven of which appear to be well taken but which do not require extended discussion here. These errors relate to the granting of instructions, to submitting the issue of punitive damages to the jury, to the excessiveness of the verdict so as to evince bias, prejudice and passion on the part of the jury, and because of admitting testimony in the two original replevin suits which had been finally disposed of and which therefore were res adjudicata.

Replevin suits have always been difficult ones to try because of the nature of the action. The labyrinthine record in this cause is proof thereof, and if Sir Walter Scott had been an attorney, certainly he would have said: "Oh, what a tangled web we weave, when by replevin we retrieve."

There are several valid reasons why this case must be reversed, some of which we now point out.

It is to be noted that the Legislature changed the form of pleading in replevin actions by amending Sec. 2859 of the Laws of 1960, Chap. 269, as follows:

"The declaration may be filed after the issuance of the writ, if it be filed on or before the first day of the return term, or before any order of dismissal be taken; and the action may be tried at the first term of the court. The defendant may plead as provided by law."

■ ■ In spite of this amendment, this section does not give the defendant the right to file a counterclaim. See Howard Carruth, et ux. v. S. J. Easterling, not yet reported in Mississippi Reports, 150 So. 2d 852. The demurrer was therefore properly sustained.

■ ■ Since the testimony with reference to punitive damages was settled in the first cause of action, and no damage was allowed and no appeal was taken therefrom, the judgment therein settled the question of punitive damages alleged to be due for the original wrongful replevin.

■ ■ ■ Furthermore, in the second cause of action, where a writ of inquiry was allowed, there is no evidence on which any punitive damages might be allowed. It is the general rule that if the original action has been dismissed or discontinued by the plaintiff without a restoration of the property to the defendant, the cause should be retained for the purpose of inquiring into defendant's rights of property and possession. Cases holding this are: Hall v. Smith, 10 Iowa 45; Crist v. Francis, 50 Iowa 257; McVey v. Burns, 14 Kans. 291; Garber v. Palmer, 47 Neb. 699; Vose v. Muller, 48 Neb. 602; Gordon, Admr. ads. Williamson, 20 N. J. L. 77; Elsberg v. Frietze, 43 P. 690. Cases holding that the defendant is entitled to have the value fixed on nonsuits are: Gale v. Hoysradt, 7 Hill 179 (N. Y.); Van Alstine v. Kittle, 18 Wend. 524 (N. Y.); Murphy v. Jenkins, 1 Den. 669 (N. Y.). The form used may be found in Ahlman v. Meyer & Schurman, 19 Neb. 63, Harwood v. Smethurst, 30 N. J. L. 230.

■ ■ While it is true that exemplary or punitive damages may be allowed in proper cases in replevin actions in this state (Burrage v. Melson, 48 Miss. 237), nevertheless punitive damages or exemplary damages are never allowed to either party in a replevin suit in the absence of fraud, malice, gross negligence or oppression. See Acre v. Bufford, 80 Miss. 565, 31 So. 898.

However, circumstances may attend the taking and detention which would justify the jury in giving such damages, and the exceptions under the law are well settled. Thus, it is generally held that where a plaintiff seizes the property without a bona fide claim or right, in bad faith, or under circumstances of aggravation or outrage, this would furnish a case for the exercise of the discretion of the jury in allowing exemplary or punitive damages, as in the case of willful or malicious trespass, or instances of peculiar circumstances of outrage, oppression and wrong in the taking and detention of the property. See Heard v. James, 49 Miss. 236. We are, therefore, of the opinion that there is no testimony in the second case which could justify the jury in granting any punitive damages.

Since this case must be retried, we feel that it is in order to set forth certain pertinent matters. The damages to be recovered in replevin must be connected with, and incident to, the contest over possession of the property. Where the property has a usable value, the successful party may be entitled to recover damages for the value of such use during the period he was wrongfully deprived thereof. In that case the damage is to be estimated by the ordinary market price of the use of such property, covering a period commencing with the wrongful detention and ending at the time of the trial, unless the facts of the case were such as to authorize the allowance of exemplary, punitive damages, and in the absence of facts which would authorize the application of any different rule. (See Taylor v. Morton, 61 Miss. 24.) Under ordinary circumstances the measure of damages is the value of the property at the time of the taking, with interest from that date to the date of the verdict.

It should be remembered that attorneys' fees in a replevin action are not recoverable, except when punitive damages are allowed, and since there is no tes-

timony in the second trial on the writ of inquiry from which exemplary damages could be allowed by the jury in the case at bar, the attorneys' fees were not recoverable. Mars v. Germany, 135 Miss. 387, 100 So. 23; Taylor v. Morton, supra; Cowden v. Lockridge, 60 Miss. 385.

██ ██ It is in order, we believe, that we should point out that whether or not the appellee in this replevin action is entitled to any damages on a writ of inquiry will depend on whether or not the property was wrongfully detained by the appellant and at a time when the defendant was attempting to pay the back installments on the notes. The record discloses that title to the property, under the conditional sales contract, remained in the seller until the purchase price was paid in full, and that the owner of the notes which were given to secure payment of the purchase price had the right to possession of the property, together with the right to sell the same in order to satisfy the balance due on the notes. This right, however, is subject to the right of the maker, Don Breland, to pay up the back installments on the notes and retain the property.

██ ██ ██ In conclusion, we believe it is wise that we should also point out that speculative damages are not allowable in replevin suits, particularly expected profits. See Palm v. The Ohio & Miss. R. R. Co., 18 Ill. 217; The County of Christian v. Overholt, 18 Ill. 223. Moreover, it is a well established rule that one cannot permit his business to be still or suffer loss of profits and collect the damages so occasioned thereby from another party. Brizsee v. Maybee, 21 Wend. (N. Y.) 144.

We are therefore of the opinion that this case should be reversed for a new trial in accordance with the foregoing opinion of this Court.

Reversed and remanded for a new trial on the writ of inquiry.

Reversed and remanded.

430

*Kyle, P. J., Gillespie, McElroy and Rodgers, JJ.,* concur.