358 So.2d 714 (1978)
CHRYSLER CREDIT CORPORATION
v.
BANK OF WIGGINS.
No. 50264.
Supreme Court of Mississippi.
May 10, 1978.
*715 Wells, Wells, Pittman & Wicker, William B. Wicker, Crymes G. Pittman, Calvin L. Wells, Jackson, Eaton, Cottrell, Galloway & Lang, Gulfport, for appellant.
Parsons & Matthews, Jack Parsons, Wiggins, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
The Circuit Court of Stone County entered judgment against Chrysler Credit Corporation for Bank of Wiggins in the *716 amount of thirty-six thousand five hundred ninety dollars ninety cents ($36,590.90), upon a complaint for delivery and judgment. Chrysler appeals and assigns the following errors in the trial below:
(1) The decision of the court in finding the security interest of appellant to be subordinated to that of appellee is contrary to the law and the facts. (Also the court erred in overruling the motion of appellant for new trial and the judgment is against the great weight of the evidence).
(2) The court erred in admitting at the second trial, over the objection of appellant, Plaintiff's Exhibit # 1.
(3) The court erred in rejecting, or in refusing to allow appellant to lay a basis for, at the second trial, evidence on behalf of appellant, to-wit: a printout of an inventory of parts taken in October and November, 1975.
(4) The decision of the court giving appellee judgment for the used automobiles was contrary to the law and the facts.
(5) The verdict of the court was contrary to the law in denying appellant the option of returning the parts and the inventory.
(6) The actions of the court at the hearing of February 25, 1976, deprived appellant of its constitutional rights of due process and equal protection of the laws.
(7) The court erred in overruling the motion of appellant to dismiss for lack of jurisdiction.
The Bank of Wiggins filed a complaint for delivery and judgment against Barringer Motor Company [Barringer] and Chrysler Credit Corporation [Chrysler], alleging that certain property belonging to the bank under an installment promissory note and security agreement executed by Barringer on November 22, 1974, was removed from the business premises of Barringer by Chrysler without the consent or permission of the bank. Barringer released the property on February 20, 1975, to satisfy debts it owed Chrysler on the purchase of new automobiles. The bank demanded judgment for the outstanding balance due under the terms of the note and security agreement. Chrysler answered and alleged that Barringer granted unto Chrysler a security interest on February 20, 1975, in the property listed in the complaint, and that such security interest was perfected by filing a financing statement which entitled it to priority over the security interest of the Bank of Wiggins.
After trial, on December 8, 1975, judgment was entered in favor of the bank, since the court found Barringer in default under the terms of the note (Bank of Wiggins) when it released the property to Chrysler said property having been previously pledged by Barringer as security for the indebtedness to the Bank of Wiggins. A second trial was held on February 25, 1976, solely for the purpose of ascertaining the property involved and the amount of damages to be awarded the bank.

I.
Was the decision of the court in finding the security interest of appellant to be subordinated to that of appellee contrary to the law and the facts?
Barringer is a corporation which handled Chrysler-Plymouth products, and it financed the sales of new automobiles under a floor-plan agreement with Chrysler Credit Corporation. On November 22, 1974, Barringer obtained a loan in the sum of forty-one thousand nine hundred dollars ($41,900.00) through the Bank of Wiggins on a Small Business Administration note. The security agreement covered personal property described as: "All shop equipment, tools, furniture and fixtures, accounts receivable, office equipment, parts, and inventory ..." A financing statement was filed November 26, 1974, in the Chancery Clerk's office of Stone County pursuant to the Uniform Commercial Code. The statement showed that Barringer was indebted to the Bank of Wiggins, and it covered the property hereinabove described. The financing statement was not filed in the office of the Secretary of State.
Barringer was indebted to Chrysler on February 19, 1975, in the sum of approximately *717 twenty-eight thousand dollars ($28,000) on new automobiles under the floor-plan agreement. The property covered by the security agreement to the Bank of Wiggins was removed from Barringer's premises on February 19 and 20 by Chrysler. At that time, Barringer executed a release of the property and a security agreement on same to Chrysler. They were signed at the insistence of Russell Tatom, Branch Manager for Chrysler.
Barringer testified that he told Chrysler (Russell Tatom) he had secured the loan from Bank of Wiggins before the Chrysler loan was closed, that he had put up the entire corporate assets, including all inventory and parts, as security for the bank loan, except that such loan did not include new cars. Barringer further testified that, on the day Chrysler removed the property from the Barringer premises, he told Tatom the property was secured on a security instrument to the Bank of Wiggins, that he did not have a copy of the security agreement with him, but that he could obtain a copy the next day from the Bank of Wiggins. According to Barringer, Tatom replied that he was not interested. Ferris O'Neal, former owner of the dealership, testified that he was present when the business was closed on February 20, 1975, and he told Tatom that Barringer owed other people for the property; Tatom answered he could not care less who Barringer owed for the property and Chrysler was going to take it anyway. Tatom testified that Chrysler took possession of the property February 20, 1975, after releases for the new and used inventory, used cars, parts and furniture of the dealership, were signed by Barringer. He admitted he did not check the records in the chancery clerk's office to determine whether a financing statement covering the property had been filed, even though such was his responsibility. Further, the last check he made of the public records was in August of 1974. He did not see the financing statement prior to taking the assets of the dealership. Tatom also admitted Barringer told him the bank had made an SBA loan to the dealership and he (Barringer) put up all his property for the loan. Tatom stated he assumed it was Barringer's personal property and he did not inquire whether Barringer encumbered his business property. Section 75-9-401(1)(c) provides that the bank's financing statement be filed in the office of the Secretary of State and, in addition, in the office of the Chancery Clerk of Stone County, Mississippi. However, Subsection (2) provides the following:
"(2) Except as provided in subsection (4B) of Section 9-313 [§ 75-9-313], a filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement."
The crucial question here is whether or not Chrysler had such knowledge of the contents of the financing statement that the security interest obtained by the bank was perfected, even though not filed with the Secretary of State. The trial court found that Russell Tatom, agent for Chrysler, had knowledge the property taken by Chrysler was encumbered by a security agreement to the bank. The principle is well settled that a finding of the court based on conflicting evidence will not be disturbed on appeal unless it is unsupported by credible evidence, clearly erroneous or against the preponderance of credible testimony. Brent v. Cox, 246 So.2d 552 (Miss. 1971); Ellis v. Ellis, 248 Miss. 483, 160 So.2d 904 (1964).
The information given by Barringer and O'Neal to Chrysler's manager constituted knowledge of the contents of the financing statement, and the security interest of Bank of Wiggins was perfected and was paramount to that of Chrysler. There is no merit in this assignment and the trial court did not err in overruling appellant's motion for a new trial on the ground that the judgment was contrary to the weight of the evidence.

*718 II.
Did the court err in admitting at the second trial Plaintiff's Exhibit No. 1?
The second trial was held to determine the value of the property. Appellee offered, and the court admitted, in evidence an inventory of parts taken on December 31, 1974, seven weeks prior to the time that the entire stock and inventory was taken by Chrysler. Appellant contends that the document was not relevant to show the value of the parts taken on February 20, 1975, that it is hearsay because Barringer had no personal knowledge of the contents, and that it violates the best evidence rule because it is not the best evidence of the prices of the items on the inventory. Barringer testified about how the inventory was taken, how the document was prepared, what the symbols contained in the document meant, and that it was prepared under his supervision by his parts and service manager. The inventory was relevant and was admissible since the instrument was properly authenticated and identified by Barringer. Tippit v. Hunter, 205 So.2d 267 (Miss. 1967); Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962).
There is no merit in the contention that the inventory violates the best evidence rule. The instrument was introduced to show that certain parts were in stock at Barringer Motor Company on December 31, 1974, and to show the value of those items. It was the original document prepared at the time the inventory was made. The best evidence rule is stated as follows:
"In proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick, Handbook on Evidence, § 230, at 560 (2d ed. 1972).

III.
Did the court err in refusing to allow appellant to lay a basis for, at second trial, a printout of an inventory of parts taken in October and November of 1975?
In King v. State ex rel. Murdock Acceptance Corp., 222 So.2d 393 (Miss. 1969), the Court stated the foundation for admitting a computer printout into evidence, as follows:
"(1) ... [T]he electronic computing equipment is recognized as standard equipment, and (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." 228 So.2d at 398.
Appellant failed to lay the proper foundation for introduction of said evidence, and further failed to request that the document be admitted. There is no merit in this assignment.

IV.
Was the decision of the court giving appellee judgment for the used automobiles contrary to the law and the facts?
Appellant argues that because four of the five used automobiles were purchased from the proceeds of the sale of cars financed by appellant, on a standard form trust receipt, its interest had priority over the Bank of Wiggins' interest under Mississippi Code Annotated Section 75-9-312(3) and Section 75-9-312(5)(b) (1972).
Mississippi Code Annotated Section 75-9-306 (1972) is intended to cover sales of collateral which are not authorized by the secured party. Subsection (2) is as follows:
"(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."
The trust receipt provides that Barringer's possession was solely for the purpose of selling or exchanging the property and that Chrysler had a security interest in proceeds *719 of the sale. Section 75-9-306(1) defines "proceeds" as:
"(1) `Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are `cash proceeds.' All other proceeds are `noncash proceeds.'"
Chrysler failed to identify the proceeds as contemplated by the above section. No showing was made that the used cars were purchased from the proceeds of new automobile sales. The Bank of Wiggins' security interest covered inventory which included these used cars. The trial court did not err in allowing appellee the value of the used cars taken by Chrysler.

V.
Was the judgment of the court contrary to the law in denying appellant the option of returning the parts and the inventory?
The trial court found that it was unable to determine what property was presently retained by Chrysler, what property had been disposed of and whether the condition of the property was the same as when taken. The record does indicate that five used automobiles were disposed of by Chrysler and, therefore, were incapable of being returned. Thus, it cannot be said that the trial court erred in allowing judgment in favor of the Bank of Wiggins for the value of the property listed on its security agreement shown to have been taken by Chrysler. Appellant contends that an action brought for claim and delivery is similar to an action in replevin and that appellant should have had a choice of either returning the property or paying the value of the property. In Standard Finance Corp. v. Breland, 249 Miss. 413, 163 So.2d 232 (1964), the Court in defining measure of damages in a replevin action stated:
"Since this case must be retried, we feel that it is in order to set forth certain pertinent matters. The damages to be recovered in replevin must be connected with, and incident to, the contest over possession of the property. Where the property has a usable value, the successful party may be entitled to recover damages for the value of such use during the period he was wrongfully deprived thereof. In that case the damage is to be estimated by the ordinary market price of the use of such property, covering a period commencing with the wrongful detention and ending at the time of the trial, unless the facts of the case were such as to authorize the allowance of exemplary, punitive damages, and in the absence of facts which would authorize the application of any different rule. (See Taylor v. Morton, 61 Miss. 24.) Under ordinary circumstances the measure of damages is the value of the property at the time of the taking, with interest from that date to the date of the verdict." 249 Miss. at 428, 163 So.2d at 238-239.

VI.
Was appellant denied its constitutional rights of due process and equal protection?
There is no showing of any denial of either substantive or procedural due process, and there is no merit in this assignment.

VII.
Did the court err in overruling the motion of appellant to dismiss for lack of jurisdiction?
Mississippi Code Annotated Section 11-38-1 (Supp. 1976) sets forth the requirements in a declaration for claim and delivery as follows:
"Any person with an enforceable lien on any personal property, or right to the immediate possession thereof, or who asserts that such property has been wrongfully taken or detained may bring an action for claim and delivery by filing a complaint in writing, under oath, describing the property, setting forth his claim, share or interest therein, attaching an itemized account, if required, and giving *720 the names of any other persons who have a similar or other claims or interest in such property. Thereupon the clerk or justice shall issue a writ directed to the proper officer to value the property, or so much thereof as may be necessary to satisfy the plaintiff's demand and cost, and to summon the persons named in the affidavit to appear in court, at the time fixed, to answer the complaint."
Appellee totally complied with the requirements of the section, and the court had jurisdiction to consider the matter. It was not necessary to allege that the value of the property in question exceeded two hundred dollars ($200.00). Therefore, this assignment is without merit.
There being no prejudicial errors in the trial, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.