NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

BARBARA A. SLOAN, a single woman,
*Plaintiff/Appellant*,

*v.*

FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona
insurance company; FARMERS INSURANCE EXCHANGE, a California
insurance company; and FARMERS GROUP, INC., a California
corporation,
*Defendants/Appellees*.

Nos. 1 CA-CV 13-0475, 1 CA-CV 19-0558
(Consolidated)
FILED 7-13-2021
_____

Appeal from the Superior Court in Maricopa County
No. CV2009-033244
The Honorable Arthur T. Anderson, Judge (Retired)
The Honorable James D. Smith, Judge

**AFFIRMED**
_____

COUNSEL

Miller, Pitt, Feldman & McAnally, P.C., Tucson
By Stanley G. Feldman
*Counsel for Plaintiff/Appellant*

Poli, Moon & Zane, PLLC, Phoenix
By Michael N. Poli, Jeff Zane
*Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Lori L. Voepel, Donald L. Myles, Jr., Ashley Villaverde Halvorson
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**         Barbara Sloan appeals the trial court's denial of her motion for a new trial under Arizona Rule of Civil Procedure 59, and motion for relief from judgment under Arizona Rule of Civil Procedure 60(c)(6).[1] For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**         In May 2009, Sloan's Phoenix home caught fire. Sloan was indicted in September 2009 for arson in connection with the fire, but the charge was eventually dismissed in October 2010 on the State's motion. Farmers Insurance Company of Arizona, Farmers Insurance Exchange, and Farmers Group, Inc. (collectively, "Farmers"), who insured Sloan's home, delayed paying Sloan (over $1 million) for claims relating to the fire until after the arson charge was dismissed.

**¶3**         In October 2009, while the arson case was still pending, Sloan filed an action against Farmers for bad faith, breach of contract, and conversion, asserting that Farmers had acted unreasonably in handling her claim. As to bad faith specifically, Sloan alleged that "Farmers wrongfully withheld its investigative materials from [her], and as a result, she suffered severe emotional distress, was wrongly charged . . . [criminally] . . . and incurred substantial damages."

**¶4**         Although Farmers paid Sloan's insurance claim once the criminal charges were dismissed, which was long before trial, Sloan refused

---

[1] This rule has been renumbered as 60(b) in the current version of the Arizona Rules of Civil Procedure. We cite the rules that were in effect at the time of the trial court's ruling. We otherwise cite the current version of statutes.

to withdraw her cause of action for breach of contract. The matter was tried before a jury over a six-week period in April and May 2012.

¶5            At the close of evidence, the trial court granted a directed verdict in Farmers' favor on both the breach of contract and conversion claims. The sole issue left for the jury to decide was whether Farmers acted in bad faith by failing to disclose exculpatory evidence Farmers had in its possession in the summer of 2009. The jury returned a 7-2 verdict in favor of Farmers.

¶6            Sloan promptly moved for a new trial under Rule 59, which the trial court denied. Sloan then appealed under case number 1 CA-CV 13-0475. The appeal was stayed in 2015 when Sloan moved the trial court for relief from judgment under Rule 60(c)(6) based upon a 2014 newly generated Department of Public Safety ("DPS") investigative report. DPS concluded that two of the Phoenix Fire Department ("PFD") investigators whose conclusions of arson led to the State filing criminal charges against Sloan, falsely reported the results of their investigation in the Sloan house fire, and recommended the PFD investigators be charged criminally.

¶7            The trial court granted Sloan's Rule 60 motion, and Farmers timely appealed. The Rule 60 appeal was assigned case number 1 CA-CV 16-0046. Following oral argument, this court reversed the trial court's Rule 60 grant and remanded the matter back to the trial court with instruction for the trial court to "revisit[] the issues of (1) how the new information [contained in the DPS report] would change the presentation of evidence or other aspects of a retrial and (2) whether any such change establishes a colorable showing that Sloan is likely to succeed on retrial." *Sloan v. Farmers Ins. Co. of Ariz. (Sloan I)*, 1 CA-CV 16-0046, 2017 WL 4173614, at *3, ¶ 14 (Ariz. App. Sept. 21, 2017) (mem. decision).

¶8            On remand, and following oral argument, the trial court, albeit through a different judicial officer than had presided over the jury trial, ruled that: (1) while portions of the DPS report may be admissible, other parts of it, such as those portions of the report "recommending charges against [the PFD investigators]," would not be; (2) that even if partially admissible, the new information contained in the DPS report would *not* change the presentation of evidence or other aspects of a retrial; and (3) that Sloan had not established a colorable showing she was likely to succeed on retrial.

3

**¶9** The trial court denied Sloan's Rule 60 motion on remand. Sloan timely appealed. Both appeals have been consolidated under case number 1 CA-CV 19-0588. We have jurisdiction pursuant Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1), (2), and (5)(a).

## DISCUSSION

### I. Denial of Sloan's Rule 59 Motion for a New Trial

**¶10** Following the jury trial, Sloan moved for a new trial under Rule 59. She identified multiple perceived trial errors, including Farmer's "arson defense," allowing an undisclosed expert witness to testify, the court's refusal to rule on work-product privilege, the court's refusal to admit documents, a challenge to one of Farmers' witnesses under Rule 702 of the Arizona Rules of Evidence, the court's failure to properly instruct the jury, and the handling of a witness who invoked his Fifth Amendment right while testifying.

**¶11** Because Sloan's opening brief addresses only two of the perceived errors raised in her Rule 59 motion, namely her claim that (1) the trial court erred by refusing to apply Rule 702 to the opinion of Farmers' cause and origin fire investigator, James Hall, and (2) the court erred by refusing to admit certain documents prepared by the Maricopa County Attorney's Office (the "MCAO") in Sloan's criminal case, she has waived the remaining arguments on appeal. *See* ARCAP 13(a)(7); *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) ("The failure to raise an issue . . . in briefs on appeal constitutes waiver of the issue."); *State Farm Mut. Auto. Ins. Co. v. Novak*, 167 Ariz. 363, 370 (App. 1990) (declining to address arguments on appeal where opening brief did not contain contentions of appellant with respect to issues presented); *State v. Bolton*, 182 Ariz. 290, 298 (1995) (finding claims waived for insufficient argument on appeal).

**¶12** We review the denial of a motion for a new trial on the two remaining claims Sloan raises for an abuse of discretion, *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015), and will affirm the trial court's rulings on the admission or exclusion of evidence absent an abuse of discretion and resultant prejudice, *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7 (App. 1998).

#### a. Testimony of James Hall

**¶13** Sloan moved several times, both before and during trial, to exclude the opinion of Farmers' cause and origin fire investigator, James

Hall, under Rule 702.[2] The trial court denied each of Sloan's motions, concluding that Hall's testimony was not offered as expert testimony and that Rule 702 did not apply. Sloan contends Hall's testimony was offered as expert testimony, that Hall was not qualified to testify as an expert, and by allowing Hall to testify, the court erred, the jury was misled, and Sloan was prejudiced.

¶14        It should be noted that Sloan limited her bad faith claim at trial to Farmers' failure to disclose exculpatory evidence it had in the summer of 2009. Because Sloan had not withdrawn her claims for breach of contract or conversion at that time, Farmers was defending against all three causes of actions Sloan had raised, not just the bad faith claim. At least part of Farmers' trial defense was that it had a reasonable basis for postponing payment to Sloan for claims related to the house fire, particularly while criminal charges for arson were pending. To bolster that defense, Farmers called Hall as a witness. Farmers relied upon Hall's conclusion of arson in processing Sloan's claim.

¶15        In denying Sloan's motions to exclude Hall's testimony, the court found Rule 702 inapplicable because such testimony went to the issue of whether it was reasonable for Farmers to rely upon Hall's opinions in processing Sloan's claims. Because Hall's testimony was not offered to prove arson—a fact which would require testimony by an expert—but was instead offered in support of Farmers' reasonableness defense, the court did not abuse its discretion in refusing to apply Rule 702.

¶16        Assuming *arguendo* the trial court erred by refusing to apply Rule 702, that error was harmless. *See Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 487 (App. 1992) ("[A]n error is harmless if there is no reasonable probability the verdict might have been different."); *Brown*, 194 Ariz. at 88, ¶ 7 ("The improper admission of evidence is not reversible error if the jury would have reached the same verdict without the evidence.").

¶17        Sloan made clear that her bad faith claim at trial was limited to Farmers conduct in failing to disclose exculpatory evidence in its possession in the summer of 2009. Sloan was indicted in September of 2009 and Farmers retained Hall the following week. Hall's report, in which he concluded the fire was of incendiary origin (arson), was not issued to

---

[2] Sloan also moved to exclude the testimony of Farmers' witness, Robert Laubacher. However, because Laubacher invoked the Fifth Amendment and refused to testify, Sloan limits her assignment of error to the court's failure to apply Rule 702 to the opinions of Hall.

Farmers until April 2010. Thus, Hall's testimony could not have been relevant to the only claim that survived directed verdict and went to the jury because Hall's investigation, conclusion, and testimony could not have revealed Farmers' state of mind *in the summer of 2009*.

### b. Exclusion of the MCAO Documents

**¶18**          Sloan also assigns error to the trial court's refusal to admit two documents created by the MCAO in Sloan's criminal case -- a case disposition worksheet (the "Worksheet") and a case log (the "Case Log"). Both documents contained the prosecutors' opinions, theories, and conclusions regarding the evidence against Sloan, including the reasons for dismissing the criminal case. Sloan sought to use the documents in the civil case against Farmers. Sloan argues the documents were essential to rebut the improper-causation arguments advanced by Farmers, that the jury was misled by their exclusion, and that Sloan suffered prejudice as a result.

**¶19**          Sloan's theory at trial was that, had the exculpatory evidence been released to her, the prosecutors, and the fire department, she would not have been criminally prosecuted.[3] Unsurprisingly, Farmers argued that even if the allegedly exculpatory information had been released, the prosecutors would still have brought criminal charges against Sloan. The prosecutors were unavailable as witnesses; thus, the court held that the issue of causation was to be decided by an "objective" standard—i.e., whether a *reasonable prosecutor* would have brought criminal charges against Sloan had Farmers disclosed the exculpatory information.

**¶20**          At trial, Sloan requested permission to discuss and use the information contained in the Worksheet. The court denied Sloan's request, finding that because it had adopted an "objective" standard on causation, allowing the parties' experts to recite MCAO's subjective and "internal assessment of the evidence and decisions" offended the objective standard and was "irrelevant . . . and that any possible relevance [was] outweighed by its misleading and prejudicial nature."[4]

---

[3]  Sloan contends that Farmers improperly withheld exculpatory information including the report of its initial cause and origin expert, Robert Laubacher, and its internal claims log.

[4] While Sloan did not specifically request permission to use the Case Log, the court nevertheless precluded its admission.

¶21 Sloan contends that despite the objective standard, Farmers was nevertheless permitted to argue that the prosecutors in Sloan's case did not consider the evidence to be clearly exculpatory, as evidenced by the fact that following its disclosure, they continued the prosecution and dismissed the case solely because of a mere technicality. According to Sloan, because the court allowed Farmers to make such subjective causation arguments, the court should have allowed her to use the MCAO documents in rebuttal at a minimum.

¶22 Based upon this record, we cannot say the trial court abused its discretion in excluding the Worksheet and Case Log. Both parties advanced their theories of causation by relying on inferences from the criminal prosecution record and Sloan has not shown she was prejudiced by such inferences. Sloan too, advanced causation arguments based on inferences from the criminal prosecution record. In Sloan's opening statement, counsel repeatedly told the jury that the criminal charges were dismissed after the information in Farmers' files was disclosed—clearly insinuating that, had the exculpatory evidence been timely disclosed, she would not have been criminally prosecuted. Because the Worksheet and Case Log did, in fact, reveal the prosecutors' subjective thoughts, their admission would be used to demonstrate more than simple inferences and would prejudice the jury's determination of whether a *reasonable prosecutor* would have brought criminal charges against Sloan had Farmers disclosed the exculpatory information. The court did not err in determining, under Arizona Rule of Civil Procedure 403, that the potential relevance of the Worksheet and Case Log were substantially outweighed by the danger of unfair prejudice.

## II.    *Denial of Rule 60 Relief on Remand*

¶23 Sloan urges us to apply a de novo standard of review of the Rule 60 denial on remand, contending the procedural posture of this case requires us to afford less deference to a judge who did not preside over the trial, and contends the second judge impermissibly reversed a factual finding made by the trial judge. Specifically, Sloan argues that by concluding Farmers relied on a causation defense, rather than a de facto arson defense, the second judge "effectively reversed a factual finding by [the trial judge]." Sloan relies on several cases from other jurisdictions for the proposition that rulings by a successor judge should be reviewed under a de novo standard where the successor judge reverses factual findings, weight of the evidence conclusions, or credibility determinations by the trial judge.

**¶24**        The cases cited by Sloan are distinguishable from the instant case. Each case cited by Sloan is missing a critical step that is present here—the appeal of a ruling and the subsequent reversal of such ruling, prior to the determination by the successor judge. *See State v. Ellis*, 453 S.W.3d 889, 896–97 (Tenn. 2015) (successor judge denied defendant's motion for a new trial prior to defendant's appeal); *Pinecrest, LLC & Mastercare, Inc. v. Harris ex rel. Estate of Callendar*, 40 So.3d 557, 559–60 (Miss. 2010) (after recusal by trial judge, successor judge was appointed by the appellate court to preside over the remainder of the proceedings; appellate court did not reverse trial judge's rulings prior to successor's appointment); *Head v. CSX Transp., Inc.*, 271 Ga. 670, 670–71 (1999) (appellate court did not become involved until after the successor judge reversed the ruling by the trial judge); *Amiker v. Drugs For Less, Inc.*, 796 So.2d 942, 945, ¶¶ 4–6 (Miss. 2000) (successor judge vacated trial judge's order prior to appellate court's involvement). In reversing the trial court's initial Rule 60 grant, this court vacated the ruling in its entirety. *Sloan I*, 1 CA-CV 16-0046, at *1, ¶ 1. And while this court remanded the matter to the trial court with instructions to revisit certain issues, *id.* at *3, ¶ 14, the court was not required to rely on the determinations made by the previous judicial officer. *See Nielson v. Patterson*, 204 Ariz. 530, 533, ¶ 12 (2003) ("A vacated judgment lacks force or effect and places parties in the position they occupied before entry of the judgment."). Thus, we decline Sloan's invitation for de novo review, and instead review the trial court's decision for an abuse of discretion. *See Johnson v. Elson*, 192 Ariz. 486, 488, ¶ 9 (App. 1998).

**¶25**        Rule 60(c) allows the trial court to relieve a party from a final judgment based on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Ariz. R. Civ. P. 60(c). "While the precise scope of Rule 60(c) relief defies neat encapsulation . . . [the rule] is primarily intended to allow relief from

judgments that, although perhaps legally faultless, are unjust because of extraordinary circumstances that cannot be remedied by legal review." *Tippit v. Lahr*, 132 Ariz. 406, 408–09 (App. 1982). A party requesting relief under Rule 60(c)(6) must show "extraordinary circumstances of hardship or injustice justifying relief." *Davis v. Davis*, 143 Ariz. 54, 57 (1984). To prevail on a motion under this provision, a party must make at least a colorable showing that the alleged information or evidence would change the outcome of the action if the case were re-tried. *See Gonzalez v. Nguyen*, 243 Ariz. 531, 534, ¶ 12 (2018) (noting well-established rule that relief from a default judgment under Rule 60(c)(6) requires a showing of "a meritorious defense"); *cf. Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 595, ¶ 17 (App. 2007) (noting that re-opening a case under Rule 60(c)(2) requires the newly discovered evidence be more than merely cumulative).

### a. Law of the Case

**¶26** Sloan argues the "factual" finding supporting the trial court's initial grant of Rule 60 relief—that Farmers relied on an arson defense—constituted the "law of the case" and that the second judge erred by failing to accept and apply that finding on remand. We disagree with the premise of Sloan's contention that the trial judge's framing of Farmers' trial defense as an "arson defense" resulted in the trial court making that a finding of "fact." Regardless, we address Sloan's "law of the case" argument.

**¶27** The "law of the case" doctrine refers to the principle that when an appellate court rules on a question of law and remands the matter for further proceedings in the trial court, the legal questions answered in the appellate court's ruling will not be disturbed in that same case below or on a subsequent appeal. *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 115 Ariz. 439, 441 (App. 1977). The trial court, however, is not precluded from reconsidering an earlier decision in a manner that is consistent with the decision on appeal. *See Hall v. Smith*, 214 Ariz. 309, 317, ¶¶ 28–29 (App. 2007); *see also Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1993) ("When . . . we apply the doctrine to decisions of the same court, we treat law of the case as a procedural doctrine rather than as a substantive limitation on the court's power."); *Zimmerman v. Shakman*, 204 Ariz. 231, 236 (App. 2003) (noting the law of the case doctrine "does not prevent a judge from reconsidering nonfinal rulings, '[n]or does it prevent a different judge, sitting on the same case, from reconsidering the first judge's prior, nonfinal rulings'" (quoting *State v. King*, 180 Ariz. 268, 279 (1994))).

**¶28**        Sloan correctly noted the arson defense to a fire insurance claim requires the insurer to prove "by the preponderance of the evidence that: (1) the fire was of incendiary origin [meaning arson] and (2) the insured was responsible for it." *Godwin v. Farmers Ins. Co. of Am.*, 129 Ariz. 416, 419 (App. 1981).

**¶29**        Interestingly, however, the jury was *not* instructed on the "arson defense." Instead, the court instructed the jury on bad faith, explaining that Sloan had to prove "Farmers intentionally withheld information about its investigation from Sloan, its insured, without a reasonable basis for such action," and that "but for Farmers' failure to disclose this exculpatory information[,] criminal charges would not have been pursued by a prosecutor." And while the record does show that Farmers "sometimes described its strategy as 'an arson defense,'" the second judge did not commit error in disagreeing with the trial judge and concluding that Farmers did not rely upon a de facto arson defense.

**¶30**        Sloan, relying on *Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325 (App. 2009), argues that because this court's decision in *Sloan I* did not explicitly disturb the trial court's conclusion that Farmers relied on an arson defense, this court implicitly affirmed that conclusion and, under *Bogard*, the second judge had no authority to revisit it. *Bogard* is distinguishable from the matter before us. In *Bogard*, this court held that because plaintiff appealed the trial judge's rulings on her claims for discrimination and retaliation, but failed to appeal the damages ruling, the damages ruling was implicitly affirmed on appeal; consequently, the successor judge had no jurisdiction to review or change that ruling. *Id.* at 332, ¶¶ 23–24. Here, no such implicit affirmation occurred. This court vacated the trial court's ruling because it "[did] not specify an adequate basis for Rule 60(c) relief." *Sloan I*, 1 CA-CV 16-0046, at *3, ¶ 14. Accordingly, because the reasons supporting the ruling were deficient, this court reversed and remanded for the trial court to provide a proper basis for granting or denying relief. *Id.* The trial court, through the second judge, was not limited in its review or conclusion related to the Rule 60 motion.

        *b.   DPS Report*

**¶31**        Continuing with her contention that Farmers relied on an "arson defense," Sloan argues she is entitled to relief from judgment because the DPS report would change the presentation of the evidence at trial and that the DPS report establishes a colorable showing that she is likely to succeed on retrial. As discussed, *supra* ¶ 29, the record does not support Sloan's contention that Farmers advanced an arson defense. But

even if *arguendo* Sloan's contention was correct, Sloan has failed to show how the 2014 DPS investigation and resulting report has any bearing on what the State or Farmers believed *in the summer of 2009* to have caused the fire.

**¶32** While the DPS investigation may call into question the integrity of the evidence Farmers had in the summer of 2009, it has no bearing on whether Farmers' actions at the time, in light of the evidence available to it, were reasonable. The record is devoid of any evidence indicating that Farmers had knowledge that some of the information provided by PFD was false, and Sloan does not advance that argument on appeal. Despite its truth or falsity, the fire investigation evidence available at the time of the alleged bad faith actions of Farmers was the evidence upon which both Farmers and the prosecutors relied. The subsequent DPS investigation and report have no bearing on whether Farmers was acting in bad faith in 2009, five years before anyone became aware that the PFD investigators had falsified their report related to the Sloan house fire. Any new evidence produced since that time, including the DPS report, is irrelevant to the issues at trial. Vacating the judgment, therefore, would be an "empty exercise." *Teamsters Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992) ("It is the invariable rule . . . that a litigant, as a precondition to relief under Rule 60[(c)], must give the trial court reason to believe that vacating the judgment will not be an empty exercise.").

### c. The Trial Court's Refusal to Call Witnesses Under Rule 63

**¶33** After the case was remanded to the trial court, Sloan, citing Rule 63 of the Arizona Rules of Civil Procedure, requested that the second judge take testimony from the DPS officers involved in the investigation, two PFD investigators, Farmer's initial cause and origin investigator, Robert Laubacher, and the trial judge. Sloan argues that the second judge's failure to call the above-mentioned witnesses was reversible error.

**¶34** Rule 63 provides: "[i]n a hearing or a nonjury trial, the successor judge must, at a party's request, *recall* any witness whose testimony is material and disputed, and who is available to testify *again* without undue burden." Ariz. R. Civ. P. 63 (emphasis added). Because the DPS investigators, PFD investigators, Robert Laubacher,[5] and the trial judge did not testify at trial, the second judge was not required to call them as witnesses. *See* Ariz. R. Civ. P. 63 (requiring a successor judge to recall a witness who testified at trial when that witness's testimony is material and

---

[5] Laubacher invoked the Fifth Amendment and refused to testify.

disputed). Rule 63 does not require a successor judge to call a witness who did not testify at trial. *Id.*

## CONCLUSION

**¶35** For the foregoing reasons, we affirm. As the prevailing party on appeal, Farmers is entitled to recover its costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

12